UNITED STATES of America

v.

Cecil MANNING as Registrar of Voters of East Carroll Parish, Louisiana; and The State of Louisiana.

Civ. A. No. 8257.

United States District Court
W. D. Louisiana,
Monroe Division.

May 30, 1962.

Robert F. Kennedy, Atty. Gen. of the United States; Burke Marshall, Asst. Atty. Gen., John Doar, Attorney, United States Department of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., Shreveport, La., for the Government.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana; Harry J. Kron, Jr., Asst. Atty. Gen., State of Louisiana; Owen W. Ware, Executive Counsel to the Governor, State of Louisiana, Baton Rouge, La., Thompson L. Clarke, Dist. Atty., 6th Judicial District of Louisiana, St. Joseph, La., Albin P. Lassiter, Dist. Atty., 4th Judicial District of Louisiana, Monroe, La., for defendants.

Robert G. Chandler, Wellborn Jack, Shreveport, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

1. This action was filed by the Attorney General of the United States on April 28, 1961, charging the defendants with having engaged in acts and practices which have denied Negro citizens of their right to register to vote without distinction as to race or color. The case was tried on November 27, 1961. Final briefs were filed on March 13, 1962.

2. The defendants are the State of Louisiana and Cecil Manning who is the Registrar of Voters for East Carroll Parish, Louisiana. Manning has been registrar in this Parish since April 6, 1959. He has lived in the Parish since 1949. In addition to being the Registrar of Voters for that Parish, he owns and operates a general store located five miles north of Lake Providence in East Carroll Parish. He also serves as a substitute rural mail carrier and has been employed in this capacity since sometime before January 1, 1957.

3. East Carroll Parish is a rural Parish located in the northeast corner of Louisiana. Its principal city and Parish seat is Lake Providence. It is divided into seven voting districts or wards. The registration of voters in this Parish is conducted on a periodic basis so that every four years a complete reregistration is held. The current four-year period commenced on January 1, 1961.

4. There are approximately 4,183 Negroes and 2,990 white persons of voting age in East Carroll Parish (as per the 1960 census). At the end of the last registration period (December 31, 1960) there were 2,845 white persons and *no* Negroes registered to vote in the Parish. At the time of the trial of this case, there were about 500 white persons and *no* Negroes registered to vote in the Parish. *No Negro has been permitted to register to vote in the Parish since 1922.*

5. Under Louisiana law applicants for registration to vote are required to es-

tablish their identities to the satisfaction of the registrar. If the registrar has good reason to believe that an applicant is not the person he represents himself to be, the registrar may require him to establish his identity by producing two credible persons registered to vote in his ward and precinct to identify him under oath. Under the practice in East Carroll Parish, applicants who do not identify themselves to the satisfaction of the registrar are not permitted to fill out an application form or otherwise commence or complete the registration process.

6. Manning has used the identification requirement to discriminate against Negroes. He restricts the possible means of identification to four:

a. He permits persons known to him to apply for registration without further identification. His standard of "knowing" is applied liberally in favor of white persons and arbitrarily with respect to Negroes. Not only does he "know" very few Negroes in the Parish but he does not "know" those Negroes with whom he is in regular contact and those who have appeared repeatedly at his office.

b. He permits white persons to apply for registration who are introduced to him by another white person known to him. He requires that Negroes be introduced to him by white persons since he "knows" very few Negroes. He will not permit one Negro to identify another.

c. Manning permits persons to apply for registration without further identification if they have been previously registered in the Parish. This necessarily excludes Negroes, because none have been registered in the Parish since 1922.

d. Manning permits persons to apply for registration who are identified by the affidavit of two registered voters from their precinct. This is tantamount to requiring Negroes to be identified by white voters, since no Negroes are registered. No white person has ever identified a Negro and, in fact, efforts by Negroes to get white people to identify

them have been unsuccessful. Thus, by virtue of Manning's requirements, and the refusal of white voters to identify Negroes, the Parish has succeeded in excluding *all* Negroes from being permitted to register and vote for the past 40 years.

7. To summarize, Manning has consistently advised Negroes that the only way they could be identified is by two registered voters. He will not permit them to identify themselves by stating under oath the essential facts about themselves or by producing documents such as driver's licenses, hunting licenses, homestead exemption certificates, tax records, military identification documents, and the like.

Between April 6, 1959 and March 17, 1961 at least eighteen Negroes appeared on seven different occasions at Manning's office seeking to apply for registration to vote. All but one of these Negroes were denied the opportunity even to fill out an application or to have their qualifications tested. They were told they would need two registered voters to identify them. The efforts of Negroes to secure white voters to identify them have been unsuccessful.

Of the 2,845 white persons who registered to vote in the Parish during the last registration period only 15 were required to be identified by the affidavits of 2 registered voters.

All of this was done pursuant to a pattern or practice of discrimination based on race; and, unless restrained by order of this Court, the defendants will continue to engage in racially discriminatory acts and practices the same as or similar to those found by this Court to have been previously engaged in for at least 40 years.

CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action under 42 U.S.C.A. § 1971(d).

2. The Attorney General of the United States is authorized to institute this action on behalf of the United States pursuant to 42 U.S.C.A. § 1971(c) to obtain relief against acts and practices

by the defendants which deprive other persons of the rights and privileges secured by 42 U.S.C. § 1971(a) and the 15th Amendment.

3. Where it is shown, as in this case, that none of the more than 4,000 Negroes of voting age in the Parish has been registered since 1922, and a substantial majority of the white persons of voting age were registered to vote during the last registration period, and a number of Negroes have attempted to register to vote, this evidence alone states a claim for relief under the Fourteenth and Fifteenth Amendments and under the Civil Rights Act of 1957, as amended. It must be concluded that Negroes have been systematically excluded from registration for voting pursuant to a pattern, practice and custom.

4. In East Carroll Parish, the four exclusive means by which defendant Manning permits applicants for registration to be identified are discriminatory *per se* and their exclusive use violates the letter and spirit of the Fifteenth Amendment and 42 U.S.C.A. § 1971(a). Manning cannot constitutionally deny to Negroes in East Carroll Parish the opportunity to apply for registration and to become registered voters only on the ground that he does not know them, or that they have not previously been registered, or that they have not produced two registered voters to make affidavits of identity on their behalf.

5. The defendants have engaged in the following acts and practices for the purpose and with the effect of denying to Negroes, on account of their race, the opportunity to apply for registration as a preliminary step to becoming registered voters. Each of these acts and practices is discriminatory and violates the Fifteenth Amendment and 42 U.S. C.A. § 1971(a) in:

"a. Failing or refusing to make reasonable inquiry as to the identity of Negroes seeking to apply for registration.

"b. Refusing to accept from Negroes reasonable proof of their identity, such as drivers' licenses, hunting licenses, homestead exemption certificates, tax records, military identification documents, and the like."

6. The acts and practices of the defendants as described in Conclusions of Law 4 and 5 have deprived Negro citizens in East Carroll Parish of the right secured by the Fifteenth Amendment and by 42 U.S.C.A. § 1971(a) to be entitled and allowed to vote without distinction of race or color. These deprivations of rights have been and are pursuant to a pattern and practice of racial discrimination within the meaning of 42 U.S.C.A. § 1971(e).

## DECREE

Pursuant to the Findings of Fact and Conclusions of Law entered this date, it is the ORDER, JUDGMENT and DECREE of this Court that the State of Louisiana and Cecil E. Manning, Registrar of Voters of East Carroll Parish, his deputies, agents, officers, employees, and successors in office, be and each is hereby enjoined from:

1. Engaging in any act or practice which involves or results in distinctions based on race or color between Negro citizens and other citizens in the registration for voting and voting processes in East Carroll Parish, Louisiana.

2. Applying to Negro applicants as the exclusive means of identification the requirements that they be known to the registrar, or that they be introduced to the registrar by a person known to him, or that they have been previously registered in the Parish, or that they produce registered voters to identify them.

3. Failing or refusing to make reasonable inquiry as to the identity of Negroes seeking to apply for registration.

4. Refusing to accept from Negroes reasonable proof of their identity, such as:

a. Authentic licenses or permits issued by State or local authority, such as driving, hunting or fishing licenses, library cards, or automobile registrations.

b. Authentic military identification documents, such as selective service registration cards, discharge papers, or reserve unit identification cards.

c. Authentic records of property ownership, such as rent receipts, deeds or contracts to purchase a home, receipts for deposits for utilities, or homestead exemption certificates.

It is the further ORDER, JUDGMENT, and DECREE of this Court that the said defendants file a progress report with the Clerk of this Court on or before the 10th day of each month after the date of this decree and until further order of this Court and serve a copy on counsel for the plaintiff. This progress report shall include:

1. A copy of the monthly report which is now submitted by the defendant registrar to the State Board of Registration which includes a list of new registrants, a list of persons scratched from the rolls, a list of transfers, and statistical totals.

2. A list of the names and addresses given by all persons rejected for registration or not permitted to apply for registration on the ground of lack of identification. This list shall show the race of the applicant, what evidence of identification, if any, the applicant possessed and the reason or reasons that this evidence was not satisfactory to the registrar.

3. A list of the names, addresses and race of all persons whose applications for registration are rejected for any other reason and the reason for such rejection.

It is the further ORDER, JUDGMENT, and DECREE of this Court that the defendants shall until further order of this Court make the voter registration books and records of East Carroll Parish, Louisiana, available for inspection and copying by the plaintiff at any and all reasonable times at the office of the Registrar of Voters of East Carroll Parish.

This Court retains jurisdiction of this cause for the purpose of issuing any and all additional orders herein that may, in its judgment, become necessary or appropriate for the purpose of modifying and/or enforcing this decree.

It is ORDERED that the costs incurred in this proceeding be and they are hereby taxed against the defendant Manning, in his official capacity as Registrar, for which execution may issue.