**Charles F. ZIMMER, Plaintiff,**

**Stewart Marshall, Intervenor-Appellant,**

v.

**John J. McKEITHEN et al., Defendants-Appellees.**

**No. 71-2649.**

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1972.

Stanley A. Halpin, Jr., Debra A. Millenson, George M. Strickler, Jr., Elie, Bronstein, Strickler & Dennis, New Orleans, La., for intervenor-appellant.

William J. Guste, Jr., Atty. Gen. of La., Baton Rouge, La., William B. Ragland, Jr., Voelker, Ragland & Brackin, Lake Providence, La., for defendants-appellees.

Before GEWIN, COLEMAN and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

East Carroll is a small parish (county) located in the northeast corner of Louisiana. It adjoins the Mississippi River on the east and the State of Ar-

kansas on the north. The area of the parish is 452 square miles. In 1970, it had 7568 black and 5316 white inhabitants; 59% black and 41% white. Lake Providence, the parish seat, has a population of 6183, about half of all the people in the parish. The remaining populace is scattered over an area of 450 square miles, at an average population density of fifteen persons per square mile.

Since 1968, the parish has been embroiled in litigation over the one man-one vote apportionment of its wards for the election of police jurors (county commissioners) and school board members. As they existed in 1968 the wards fell far short of compliance with the one man-one vote rule. The sole issue is the method to be used in bringing the parish into compliance with that constitutional principle.

The litigation was initiated by a white citizen of the parish, who sought enforcement of the rule. Thereafter, Stewart Marshall was allowed to intervene on behalf of himself and the class of black voters in East Carroll. The intervenor urged that allowing the police jury and school board to be elected from the parish at-large denied the rights of black voters secured by the Fourteenth Amendment, the Fifteenth Amendment, and the Voting Rights Act of 1965. However, no three judge court was convened as required in Voting Rights Act cases. See Allen v. State Board of Elections, 1969, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 and Perkins v. Matthews, 1971, 400 U.S. 379, 91 S.Ct. 431, 27 L. Ed.2d 476.

This appeal emanates from a hearing held on August 2, 1971, after which the District Court adhered to its previously adopted parish at-large election plan. Notice of appeal, with the necessary appeal bond, was filed on August 9, 1971. The plaintiff's brief in this Court was filed December 1, 1971. The appellees' brief followed on December 15. Oral argument in this Court was scheduled for, and did take place, April 5, 1972.

In the meantime the original plaintiff was allowed to withdraw and the litigation was pursued by the intervenors.

On March 23, 1972, the plaintiff-intervenor-appellant, Stewart Marshall, filed a motion before the District Court, praying that the order of August 2, 1971, *then on appeal to this Court,* be withdrawn and that the parish officers be elected by wards according to a plan of population equalization which was filed with the motion.

On March 27, 1972, the District Court by detailed order, approved the plan thus submitted, reapportioning the parish by wards, and directing that police jury and the parish school board should be elected accordingly. The wards were of unequal population, so in some instances more than one official was to be elected from a particular ward, depending on its population quotient.

In the absence of exceptions not applicable to the situation now before us, once an appeal is taken, jurisdiction passes to the appellate court, Turner v. HMH Publishing Company, 5 Cir., 1964, 328 F.2d 136, 137; Janousek v. Doyle, 8 Cir., 1963, 313 F.2d 916, 920; Thompson v. Harry C. Erb, Inc., 3 Cir., 1957, 240 F.2d 452, 454.

The District Court was therefore without jurisdiction to enter the order of March 27, 1972. Since the defendants have duly appealed its entry that order is hereby vacated.

This leaves for disposition the judgment of August 2, 1971, *the original subject of this appeal.* That judgment was the result of a hearing conducted on July 29, 1971, at which the parties to the litigation submitted several plans of reapportionment and witnesses were examined.

The District Court then found that the black population of East Carroll comprised 58.7% of the parish, that the plan of reapportionment offered on behalf of the police jury and school board was more satisfactory than any other plans presented because it offered a "zero deviation" while the other plans

did not; that the plan did not discriminate against the black population nor dilute its voting strength, whereas other plans did dilute the black population of different areas within the parish; that the plan adopted had been endorsed by two of the three black public officials then serving on the police jury and the school board; hence the plan would be approved by which the parish would be divided into seven wards and that one police juror and one school board member would be elected from each of the wards, except that three would be elected from Ward 3, with all officials to be "elected at-large throughout East Carroll Parish".

As stated, this is the judgment now before us for review.

On appeal, Stewart Marshall, and the class he represents, do not contend that the District Court findings are clearly erroneous. They do urge that the District Court was without power to order parish at-large elections because under Section 5 of the Voting Rights Act of 1965 the Attorney General of the United States had duly objected to Louisiana statutes which would have permitted at-large elections for school board and police juries. The Attorney General held, as a general proposition, that such elections discriminated against Negro voters on account of their race and denied them an effective voice in the election of parish officials. The Attorney General thus denied approval to state statutes of general application and appellants say this was binding on the District Court in the exercise of its equity jurisdiction in a case primarily concerning the application of the one man-one vote rule.

■■ It must be noted that this is not a case in which a legislature, board, or commission attempted to reapportion itself. In such a case, Section 5 clearly applies. What we have here is an adversary action, invoking the equity jurisdiction and the equitable adjudication of the District Court. As the Supreme Court succinctly said in Connor v. Johnson, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268, and as this Court said

in Sheffield v. Itawamba County Board of Supervisors, 5 Cir., 1971, 439 F.2d 35, *court ordered plans* resulting from equitable jurisdiction over adversary proceedings are not controlled by Section 5. If this were not so, the exercise of jurisdiction by the courts would be meaningless. The Attorney General has no authority to review or to set aside the judgments of courts duly entered in the exercise of their jurisdiction over the parties and the subject matter.

Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) was concerned with legislative enactments, not judicial determinations. Neither had there been any prior litigation or judicial determination in Perkins v. Matthews, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971).

On June 3, 1971, the Supreme Court entered its Per Curiam opinion-order in Connor v. Johnson, *supra*. Connor involved the election of twelve Representatives from Hinds County, Mississippi, pursuant to a court ordered plan of reapportionment. The Three-Judge District Court had directed that these twelve state legislators be elected from the county at-large. The Supreme Court, on the representations contained in the briefs and on the language contained in the lower court decision, directed the District Court, "absent insurmountable difficulties, to devise and put into effect a single-member district plan * * * *."

It is to be noted, however, that Hinds County had a population of 214,973 and a representative was required for a population norm of 18,171 per seat. In an at-large election the candidate would have to make the race before 196,802 more people (twelve times the number) than was required for a single-member district. As it developed in that case, there were insurmountable obstacles to the creation of single-member districts within the time frame involved and the search continues for a solution.

In the case of East Carroll Parish the total population amounts to only 12,884. In 99% of the land area the population

density averages only fifteen persons per square mile. There may be insurmountable difficulties to the creation of single-member districts for the election of police jurors and school board members. As to this, the present record presents no findings. The plan approved by the District Court after the perfection of this appeal had some multiple member wards.

■ We are unable to see how at-large elections in this small parish could possibly discriminate against its black citizens. They have a commanding majority of the total population. This majority would participate in the election of not one but of every police juror and every school board member in the parish. Every elected official would thus be answerable to all black citizens of the entire parish. On a single-member district plan, if such can be devised, the voters would have a voice in the election of only one member on the police jury or the school board, It would, therefore, be just as easy to say, in the exercise of discretion, that a single district plan in this parish would more clearly dilute the voting power of the blacks than would one in which every voter, black and white, has the same identical voice in the selection of not one, *but all*, members of the elective body. As a matter of fact, the District Judge so found.

We are aware of no case in this Court or in the Supreme Court which has held that in the exercise of its jurisdiction to enforce the one man-one vote mandate of the Constitution a District Court *may not* direct that county officials be elected by all the voters of the county when there is no racially discriminatory purpose or effect.

It is true that in East Carroll 54% of the registered voters are white and 46% are black. This case is very much like Howard v. Adams County Board of Supervisors, 5 Cir., 1972, 453 F.2d 455, certiorari denied 407 U.S. 925, 92 S.Ct. 2461, 32 L.Ed.2d 812.

In Adams County 64% of the population lived in the City of Natchez. In a one man-one vote rearrangement of the five districts for the election of County Supervisors one district which formerly had a black population of 75% became a district with a white majority, and there were other radical changes as described in the opinion of the Court. The Court nowhere spoke of racial voting strength, *but of population*.

The Court [Judges Gewin, Goldberg, and Dyer] stated:

"[W]e reject the plaintiffs' motion that they are constitutionally entitled to have old District Four divided into two predominately black electoral districts simply because they command a population concentration of sufficient size and contiguity to constitute two equally apportioned districts." 453 F.2d at 458.

\* \* \* \* \* \*

"Inevitably, people of different races, national origins, and contrasting tenets will be shifted under reapportionment plans to districts in which they may no longer be in the clear majority. But when, as here, no racial motivation spawns a change of the voting area of those complaining, and the redistricting plan does not unconstitutionally dilute the voting strength of the complaining minority, there is no abridgement of voting rights." 453 F.2d at 459.

On May 22, 1972, the Supreme Court affirmed, Per Curiam, 406 U.S. 939, 92 S.Ct. 2045, 32 L.Ed.2d 328 the decision of the Three Judge District Court in Ferrell v. State of Oklahoma ex rel. Hall, 339 F.Supp. 73 (W.D., Okl. 1972).

In that case, the lower court held that in complying with the one man-one vote rule the Oklahoma Legislature was not required to create a single senate district in an area in which Negro citizens constituted a clear majority, and no denial of equal protection resulted from inclusion of part of the Negro community in each of three senate districts. Oklahoma is not covered by the Voting Rights Act of 1965, as is Louisiana, but

it is subject to the Fifteenth Amendment.

The District Court, affirmed by the Supreme Court, said:

"One feature of the complaint filed by the plaintiffs is a plea for apportionment of State Senatorial Districts in Tulsa County according to race. Such a color conscious approach to apportionment is but another form of racial segregation and is constitutionally impermissible (citing cases)." 339 F.Supp. at 83.

The order of the District Court in this case dated March 27, 1972, is vacated because that Court was without jurisdiction to enter it.

The conditional motion of Stewart Marshall (filed March 28, 1972) to dismiss the original appeal in this case is denied.

The judgment of the District Court dated August 2, 1971, is affirmed.

Any citizen of East Carroll Parish is, of course, free to come forth at any time in a new case with a plan which would divide the parish into single-member districts of equal population for the election of police jurors and school board members, to be adjudged on its merits when presented.

In the meantime, this four year old case in a small rural parish, with a Negro population majority of almost 3 to 2, is terminated and in that parish every vote for county officials is left to its equal weight with that of every other vote cast, regardless of race or any other consideration.

Affirmed.

GEWIN, Circuit Judge (concurring in part and dissenting in part):

I fully concur with the majority's conclusion that § 5 of the Voting Rights Act of 1965 does not compel the submission of court ordered plans to the Attorney General and that the district court was without jurisdiction to modify its August 2, 1971, reapportionment decree after an appeal had been taken from that decree and before this court had disposed of that appeal. However, I am very doubtful that the majority accords proper emphasis to significant facts in this case or that the correct legal standard has been applied to the facts. I therefore dissent from the affirmance of the August 2, 1971, reapportionment decree.

At the outset I feel constrained to point out that it appears that the majority fails to give adequate consideration to the appellant's contentions. Marshall and the class he represents do emphasize their contention that the court was without power to order at-large elections because of the Attorney General's disapproval of the Louisiana statutes. But Marshall also asserts that the court was *clearly erroneous* in finding that at-large elections do not dilute the voting strength of black voters of that parish.[1] I believe that Marshall is correct in this assertion.

It seems to me the majority errs in focusing exclusively on the total population ratio of the Parish. The standard which the Supreme Court has articulated is whether "designedly or otherwise, a multi-member constituency apportionment scheme, under the circumstances of a particular case, would operate to minimize or cancel out the voting strength of racial or political elements of the voting population." Burns v. Richardson, 384 U.S. 73, 88, 86 S.Ct. 1286, 1294, 16 L. Ed.2d 376, 388 (1966); Fortson v. Dorsey, 379 U.S. 433, 439, 85 S.Ct. 498, 13 L.Ed.2d 401, 405 (1965).[2] The majority opinion presumes that since the blacks

---

1. Appellants brief on appeal pp. 5, 15–17.

2. The majority opinion relies on Howard v. Adams County Board of Supervisors, 453 F.2d 455 (5th Cir. 1972) to support its view that population, not voting strength, is determinative. That reliance appears inappropriate in view of Judge Dyer's discussion of the voting strength test, 453 F.2d at 457–458, and the approval of the district court's finding that the plaintiffs there had failed to show that the plan was a constitutionally impermissible dilution, minimization, or cancellation of the voting strength of the black citizens of Adams County, 453 F.2d at 458.

in East Carroll Parish constitute a numerical majority (59%) it is therefore impossible as a matter of law for their voting strength to be diluted, minimized or cancelled. The blacks in the Parish presently constitute a minority of the registered voters (46%). During the ten year period from 1961 to 1971 the black voter registration in the Parish increased from zero to approximately 2,899 (including 2,122 Federally registered voters) while the white registration increased from approximately 2,845 to 3,342.[3]

Louisiana law has for many years required the members of the Parish Police Jury and School Board to be residents of the ward from which they are elected and to be elected by the voters of the ward. L.R.S. § 33:1221, et seq.; L.R.S. § 17.51.[4] Prior to the court-ordered change to at-large elections in 1968, black representatives were elected from the wards to two seats on the Police Jury and to one seat on the School Board.

It is apparent to me that the change to elections at-large makes it substantially more difficult for black voters to elect representatives than under the traditional ward system which Louisiana law requires. The at-large election dilutes any possible majority of black registered voters in one or more new and impartially drawn wards with the overall majority of white registered voters in the Parish. It was precisely this sort of dilution which caused the Attorney General to disapprove under § 5 of the Voting Rights Act of 1965, 42 U.S.C., § 1973c, the Louisiana statutes which sought to amend the Louisiana law to allow at-large elections for school boards and police juries.

However it is not necessary to decide whether in the circumstances of this case the dilution rises to the level of a denial of 14th or 15th Amendment rights. In this case we need only determine whether the district court abused its discretion in fashioning an equitable remedy. We are not faced with taking the constitutional measure of an apportionment policy adopted by the state or one of its sub-divisions as was the court in Ferrell v. Hall, 406 U.S. 939, 92 S.Ct. 2045, 32 L.Ed.2d 328 (1972); Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 353 (1971) and Burns v. Richardson, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966).

In Connor v. Johnson, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971) the Supreme Court noted:

".   .   . [W]hen district courts are forced to fashion apportionment plans, single-member districts are preferable to large multi-member districts as a general matter."

3. These figures are based on the 1962 findings of the district court in the voter registration suit brought in the Parish, United States v. Manning, 205 F.Supp. 172 (W.D.La.1962), and on the State of Louisiana Board of Registration, Report of Registered Voters, month ending October 6, 1971. See Appellant's Brief, p. 3; Appellee's Supplemental Brief, p. 1.

4. Until 1968, Louisiana law prohibited at-large elections for School Boards and Police Juries (the law required at least five wards from which the members of these bodies were to be elected). By Louisiana Acts of 1968 No. 445 Section 1 (amending La. R.S. 33:1221) and No. 561 (adding La. R.S. 17:71.1–71.6), Louisiana Law was amended to allow at-large elections (or elections from less than five wards) for School Boards and Police Juries.

On April 29, 1969, Acts 445 and 561 were submitted to the Attorney General of the United States pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c. On June 26, 1969, both Acts were rejected as having "the effect of discrimination against Negro voters on account of their race, and of denying to them an effective voice in the selection of Police Jury and School Board members." On September 10, 1969 this rejection was reaffirmed by the Attorney General of the United States, citing as a specific example of racial discrimination, the at-large scheme of elections in East Carroll Parish.

402 U.S. at 692, 91 S.Ct. at 1762, 29 L. Ed.2d at 271. See also, Hall v. Issaquena County Board of Supervisors, 453 F.2d 404 (5th Cir. 1971). No insurmountable difficulties of any kind have been demonstrated in this case. Both parties here presented the district court with a choice of various plans employing the traditional ward concept [5] which would have adequately solved the one-man one-vote problem without the dilution created by a wholly at-large scheme.

My view is not altered by this court's decision in Howard v. Adams County Board of Supervisors, 453 F.2d 455 (5th Cir. 1972). *Howard* approved the realignment of districts to comply with the one-man one-vote concept, not the adoption of an at-large election scheme. The white population constituted a numerical majority in Adams County and the black plaintiffs essentially sought to have the new districts drawn so as to assure two black majority districts. The Board of Supervisors adopted a reapportionment plan devised by an outside consulting firm, not the district court, which had been instructed to equalize the population in the districts and equalize the responsibilities of each supervisor. Finally, the plan in *Howard* had been submitted to the Attorney General for his approval and the Attorney General had indicated no objection.

While not controlling here, the disapproval of the Louisiana at-large election statutes by the Attorney General is strong evidence in support of Marshall's contention that the at-large scheme results in dilution of the black voting strength. Obviously the district court became dissatisfied with its own choice of a plan because the court sought to change its decree pending appeal to award the relief Marshall requested. I would vacate the district court's order of August 2, 1971 and remand the case for the entry of an appropriate apportionment decree.

5. The Police Jury proposed an alternative plan for elections from districts in the

event the district court found the at-large plan unconstitutional.