**Kittridge TROXLER**

v.

**ST. JOHN THE BAPTIST PARISH POLICE JURY et al.**

**Civ. A. No. 71–1661.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Aug. 5, 1971.

Daniel E. Becnel, Jr., Reserve, La., for Kittridge Troxler.

Melvin P. Barre, Dist. Atty., Edgard, La., for St. John the Baptist Parish Police Jury.

Benjamin E. Smith, Smith & Scheuermann, New Orleans, La., for Henry J. Hymel, Rudolph S. Sorapuru, Hannon I. Barre, Ernest A. Clement, Sr., Harry J. Montz and Raymond G. LeBouef, Individually.

A. M. Trudeau, Jr., New Orleans, La., for intervenors George Clark and Ezekiel Jackson.

HEEBE, District Judge:

Plaintiff, Kittridge Troxler, filed this lawsuit on behalf of himself and other residents of St. John the Baptist Parish similarly situated to compel the parish police jury to redistrict or reapportion itself based on the 1970 federal census. The complaint recited population figures which were not disputed by the police jury showing existing population deviations in excess of 80%, deviations certainly extreme enough to constitute malapportionment. Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).

Pursuant to Court order, each side submitted proposed plans of redistricting. Thereafter, George Clark and Ezekiel Jackson intervened on behalf of themselves, both individually and in their representative capacity as officers of the NAACP and on behalf of the black voters of the parish in support of the police jury plan.

Five plans have now been submitted for the Court's consideration. Plaintiff's plans 1 and 4, which are apparently supported by three of the present police jurors individually, are substantially similar in creating three multi-member election districts out of the existing six wards. The Court rejects plaintiff's plan 2 based on population approximations and plaintiff's plan 3 which would decrease the size of the police jury from its present nine members to five members.

The defendants' plan was submitted on behalf of the police jury as a body politic, six of the individual police jurors and the intervenors.

Reapportionment is primarily a legislative function. It is only a judicial function when the legislature or local governing body has not apportioned itself in a way which effectively guarantees each voter equal representation. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Ordinarily, a plan of reapportionment enacted by a local governing body, such as the police jury, which meets the mathematical requirements of the one-man, one-vote formula, is presumed to be valid. The challenging party then has the heavy burden of proving that the plan is impermissible for any reason, as, for example, if it dilutes minority voting strength. Reynolds v. Sims, *supra;* Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); Sewell v. St. Tammany Parish Police Jury, Civil Action 69–1271 (E.D.La.1971); *Cf.,* Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971).

Under the circumstances of this case, however, the normal presumption of validity should not attach to the parish plan. First, it should be noted that the parish plan has a maximum population deviation of 6.2%. The courts have steadfastly rejected the proposition "that there is a fixed numerical or percentage population variance small enough to be considered *de minimis* and to satisfy without question the 'as nearly as practicable standard'," Kirkpatrick v. Preisler, 394 U.S. 526, 530, 89 S.Ct. 1225, 1228, 22 L.Ed. 2d 519 (1968)[1] and have consistently required the governing authority to prove that any deviation from mathematical exactitude is justifiable under the circumstances. Swann v. Adams, *supra.* Here, the police jury has made

---

[1]. *Compare e. g.,* Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1968) (5.9% deviation impermissible), *with e. g.* Abate v. Mundt, 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971) (11.9% deviation permissible).

no attempt to justify any of the population deviations their plan contains.

Moreover, while the courts in the past have primarily been concerned with achieving equality of representation, it seems clear that where competing plans meet the constitutional test of mathematical exactness, the court can look to other identifiable legitimate interests of the voters and the political body in choosing among the plans. *See,* Abate v. Mundt, *supra; Cf.* Whitcomb v. Chavis, *supra;* Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960).

St. John the Baptist Parish historically has been predominately rural. Recently, an influx of industry as well as suburbanites commuting to New Orleans has created several sizeable towns in the part of the parish located on the east bank of the Mississippi River —Laplace, Reserve and Garyville. These towns contain the majority of the parish's population, and their residents have interests dissimilar to the residents of the predominately rural remainder of the parish. It is this rapidly expanding area which is grossly under-represented in the present police jury, and it is residents of this area who brought this lawsuit to compel reapportionment so that their interests would be equally represented on the police jury.

Under the existing plan, the parish ward lines are so drawn that the Laplace, Reserve and Garyville areas, though underrepresented, each wholly exist within a single ward. Under the new parish plan, each of these areas would be rather conspicuously broken up. Three wards with large rural populations would now each contain a portion of suburban Laplace. Likewise, Reserve and Garyville are each split between two wards.

Where a governing body votes to reapportion itself in a fashion which would carve up in small sections areas which have traditionally identifiable interests, it is incumbent upon that body to explain why such fragmentation was necessary. We think this especially true when a glance at the map indicates, as it does here, that the fragmentation carving did not follow any rational basis but rather hints of that "taint of arbitrariness" of which the Supreme Court has cautioned the lower courts to beware. Roman v. Sincock, 377 U.S. 695, 710, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964). Needless to say, no explanation for the carving up of the towns has been forthcoming here.

Finally, we note that the police jury plan is based not on the federal census, which is presumed valid, but on a "headcount" conducted under the authority of the police jury. While reapportionment need not be based on the federal census and newly-drawn political lines need not follow enumeration districts, Burns v. Richardson, 384 U.S. 73, 81, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1965), the party relying on an unofficial census has the burden of proving its validity. Shalvoy v. Curran, 393 F.2d 55 (2d Cir. 1968). Here, the police jury used this headcount allegedly because the federal census enumeration districts are too large to be combined into election districts without resulting in impermissibly large variations. However, the police jury has made no attempt to validate their census, and in fact the plaintiff has attacked the validity of the headcount.

We are not prepared to say that any one of these three factors alone renders the police jury plan unacceptable. However, we do think that the cumulative weight of the three factors at least dispels the general presumption of validity which attaches to apportionment schemes approved by a governing body. Thus, we are left with a choice between two plans which are to be weighed on their comparative merits.

■ We resolve this choice in favor of plaintiff's plan 1 to which, as later appears, we add one modification. Plaintiff's plan 1 has these features to recommend it over the police jury plan:

1—The maximum population deviations is 2.3% as compared to the defendants' 6.2%.

2—The plan is based wholly on the federal census figures.

3—The plan combines federal census enumeration districts in what appears to be a neutral, rational fashion.

4—The plan follows traditional ward lines where possible and does not carve up any recognizable interest area.

5—The plan crosses the river at the northern end of the parish where regular transportation across the river exists and where the interests of the residents on both sides of the river are more similar than are the interests of residents residing on the opposite sides of the river at the southern end of the parish.

Since plaintiff's plan 1 has a lower population deviation than his plan 4, we will accept plan 1. However, the Court will order that in Election District III a requirement be added that at least one of the members of the police jury from District III resides in the section of District III lying on the east bank of the Mississippi River.

Accordingly, IT IS THE ORDER OF THE COURT that defendants, St. John the Baptist Police Jury and the police jurors individually, be, and they are hereby, ENJOINED from redistricting on the basis of the plan submitted by them to the Court.

IT IS THE FURTHER ORDER OF THE COURT that the St. John the Baptist Police Jury REDISTRICT themselves in accordance with the following plan:[2]

1—St. John the Baptist Parish will be divided into three election districts.

2—Election District I is to be represented by four police jurors who will run at large throughout the District. The District will be composed of the following enumeration districts based on the 1970 census—enumeration districts 1, 1B, 2, 3, 4, 5, 8 and 11. The total population of this District is 10,591.

3—Election District II is to be represented by two police jurors who will run at large throughout the District. The District will be composed of enumeration districts 6, 7, 9 and 10. The total population of this District is 5,362.

4—Election District III is to be represented by three police jurors who will run at large throughout the District. However, at least one police juror representing District III must reside on the east bank of the Mississippi River. District III will be composed of enumeration districts 12, 13, 14, 15, 16, 17 and 18. The total population of this district is 7,860.

IT IS THE FURTHER ORDER OF THE COURT that plaintiff be AWARDED the costs of this proceeding.

2. St. John the Baptist Parish has a total population of 23,813 according to the 1970 census. To satisfy the one-man, one-vote requirement, each police juror should ideally represent 2,646 people. Under the plan ordered, the population will be distributed as follows:

| ELECTION DISTRICT | FORMER WARDS | NO. OF JURORS | ACTUAL POPU-LATION | IDEAL POPU-LATION | % DEVI-ATION | NON-WHITE POPULATION | % NON-WHITE |
|---|---|---|---|---|---|---|---|
| I | 1, 1B, 2, 3, 4, 5, 8, 11 | 4 | 10,591 | 10,584 | —0.066% | 2,655 | 25% |
| II | 6, 7, 9, 10 | 2 | 5,362 | 5,292 | —1.32% | 2,612 | 49% |
| III | 12, 13, 14, 15, 16, 17, 18 | 3 | 7,860 | 7,938 | +0.98% | 5,743 | 73% |