**Earl PANIOR, William M. Johnson, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**The IBERVILLE PARISH SCHOOL BOARD et al., Defendants.**

**Civ. A. No. 72–15.**

United States District Court,
M. D. Louisiana.

May 23, 1973.

George M. Strickler, Jr., Elie, Sobol, Strickler & Dennis, New Orleans, La., for plaintiffs.

Joseph W. Cole, Jr., Port Allen, La., for defendants.

E. GORDON WEST, District Judge:

This suit seeks a reapportionment of the Iberville Parish School Board. In the spring of 1971, pursuant to a mandate from the Louisiana Legislature, the Iberville Parish School Board undertook to reapportion itself. While this undertaking was in progress, the attorneys representing the named plaintiffs herein filed this suit attacking the old apportionment plan. Since the Board was in good faith reapportioning itself, the Court took no action on this suit. On February 24, 1972, the Board's plan of reapportionment was completed and submitted, pursuant to Section 5 of the Voting Rights Act, to the Attorney General of the United States for his approval. On May 1, 1972, the Attorney General approved the plan. Immediately thereafter the attorneys for the plaintiffs amended their suit to attack the new plan as being constitutionally infirm.

They contended that the new plan contains too much deviation from the one man, one vote principle, and that even if it is not deficient in that respect, that it is illegal because it is only "partially in effect," i. e., when the first election was held under the new plan, only eight members were up for election, leaving seven of the old members still serving until the expiration of their staggered terms.

After a full evidentiary hearing, the Court finds insufficient merit to the contention of the plaintiffs to justify granting the relief requested. To take these complaints in inverse order, as far as the second complaint relative to the number of board members elected at the last election is concerned, there is simply no merit. When we concern ourselves with apportionment, which actually should be an area belonging exclusively to the legislative branch of the government and not to the judiciary, we are not concerned with *who* become members of a board, but only with the question of how many people are actually represented by whoever may happen to be elected. When the new plan went into effect, the seven members whose staggered terms had not expired, did not continue to represent the same districts which they previously represented. Instead, their districts were rearranged to conform geographically to the new plan. Hence, if the plan itself is valid, then each current member of the board, whether he was elected before or after the plan went into effect, is now representing only the number of people contained in his new district. The reason for not electing all new members at the last election—the first election under the new plan—is obvious and good. These board members serve staggered terms in order to assure maximum continuity in board affairs. While these seven members continue in office for the remainder of the term for which they were duly elected, they will represent their new district only. As their terms expire, an election will be held in that district. Actually, the plan provides for staggered terms, allowing five members to be elected every other year, that is, in each congressional elec-

tion year. They will be elected at staggered intervals and will, as is customary, serve staggered terms. It must be remembered that when they were elected, no infirmity had been declared in the manner of their election. To say now, simply because districts are rearranged, that they must forfeit the office to which they were legally elected, before the expiration of their term, would violate both the due process clause and the equal protection clause of the United States Constitution. Within a relatively short period of time those seven staggered terms will expire and all members of the board will then have been elected under the new plan. Certainly there can be no such irreparable injury resulting from this procedure as could possibly give rise to the injunctive relief sought by counsel for these plaintiffs.

Turning now to the plan itself, while the deviations in four of the districts might be somewhat larger than optimum, under the peculiar circumstances of this case, we cannot say that they are such as to be constitutionally infirm. Iberville Parish has an unusual school system. Basically the parish is divided into four distinctly different segments, geographically and economically, and while they collectively form the Parish of Iberville and its total school system, each segment actually forms a school system within itself. For example, the Maringouin, Rosedale, and Grosse Tete area forms the northernmost portion of the parish. This area is separated from the remainder of the parish by a major drainage basin area, bayous and swamps, if you will which is largely uninhabitable. This area effectively separates the northern portion of the parish both geographically and economically from the rest of the parish. The school system in this northern part of the parish is as separate from those in other parts of the parish as if it were another parish. Under the new plan, that area is composed of school board districts A and B, with each district having one school board member. District A has a population of 2,366, the District B has a

population of 2,367, and thus these two districts are evenly divided as to population. This is a perfect one man, one vote situation insofar as these two districts are concerned. But these are two of the districts which the plaintiffs have zeroed in on in their complaint. They say that the optimum population per district, on a parish-wide basis, is 2,050, and thus, on a parish-wide basis, these two districts are under-represented by 15 per cent. But under the peculiar circumstances existing in this parish, it is the opinion of this Court that the school board representation as to these two districts is all but perfect. In Iberville Parish we cannot blindly look at parish-wide figures. We must look at reality. The evidence showed that the four distinct areas of the parish are treated as separate school systems, and all of the people in the Maringouin-Gross Tete-Rosedale area are equally represented on the board. The geographic situation makes it virtually impossible to combine those election areas with any others in the parish.

The other area complained of is Districts I and J of the new plan. These two districts are over-represented by 22 per cent and 21 per cent respectively on a parish-wide basis. But again we must look realistically at the circumstances involved. Iberville Parish is cut by the Mississippi River running north and south through the parish. The bulk of the parish is west of the river, but on the east side lies the Sunshine-Carville-St. Gabriel area. There is no bridge across the river in Iberville Parish. The new plan divides this eastern portion of the parish into school districts I and J. District I has a population of 1,597, and District J has a population of 1,618. Thus, there is practically no deviation as between the two districts, but when considered on a parish-wide basis, they deviate from the optimum by 22 per cent and 21 per cent respectively. But under the circumstances of this case, these deviations are unimportant. What is important is that all of the people on the east side of the river, who are

people similarly situated, are equally represented in all matters pertaining to the school system in which they are interested.

While the plan was not submitted, approved, or disapproved by the Public Affairs Research Council, nevertheless its Director of Research testified that in his opinion Districts I and J had to be considered separately from the other areas of the parish. We agree. He did testify that while the deviation in Districts A, B, and D, in which there are deviations of 15 per cent, 15 per cent, and 13 per cent respectively, could be somewhat reduced by making up new census districts, he nevertheless felt that it was not unreasonable, under the peculiar circumstances of this parish, to treat these areas separately as has been done under the present plan.

In short, it is the opinion of this Court that while the isolated figures presented by counsel for the plaintiffs indicate some deviations that require explanation and justification, the school board has satisfactorily explained and justified those deviations. Six out of the twelve districts created by the present plan have deviations of not over 4.6 per cent, and one has a deviation of only 8 per cent. These are all, of course, well within allowable limits even on a parish-wide basis. The other five districts, while having larger deviations when considered on a parish-wide basis, have minimal deviations when realistically considered in light of the compelling necessities of this case. The people of Iberville Parish are fairly represented by their school board members who serve in accordance with the districts created by the present apportionment plan, and this Court finds nothing in the evidence presented to it that would justify its holding that there is any constitutional infirmity in the apportionment plan adopted by Iberville Parish School Board on February 24, 1972, and ap-proved by the Attorney General of the United States on May 1, 1972.

For these reasons, the plaintiffs' demands will be rejected and this case will be dismissed.