**Earl PANIOR and William M. Johnson, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

v.

**The IBERVILLE PARISH SCHOOL BOARD et al., Defendants-Appellees.**

**No. 75–2381.**

United States Court of Appeals, Fifth Circuit.

Aug. 2, 1976.

George M. Strickler, Jr., New Orleans, La., for plaintiffs-appellants.

Samuel C. Cashio, Dist. Atty., Maringouin, La., Joe W. Cole, Jr., Port Allen, La., John F. Ward, Jr., Baton Rouge, La., for Iberville Parish School Bd.

Wm. J. Guste, Jr., Atty. Gen., Baton Rouge, La., for Edwin Edwards.

Before COLEMAN and INGRAHAM, Circuit Judges, and O'KELLEY, District Judge.

COLEMAN, Circuit Judge.

This is an appeal from an order of the District Court approving, without a hearing, a plan for the reapportionment of the Iberville Parish School Board. We affirm.

Pursuant to a mandate from the Louisiana legislature, the Iberville Parish School Board, in the spring of 1971, undertook to reapportion itself. On February 24, 1972, the Board submitted its reapportionment plan to the Attorney General under Section 5 of the Voting Rights Act. He did not interpose any objection.

Appellants, who had filed a class action suit challenging the old plan, amended their suit to attack the new plan as being constitutionally infirm on one man-one vote principles. The District Court approved the Board's plan and dismissed the suit, *Panior v. Iberville Parish School Board*, M.D.La. 1973, 359 F.Supp. 425. On appeal, this Court reversed for the reason that the large population deviation among election districts could not be constitutionally justified, *Panior v. Iberville Parish School Board*, 5 Cir. 1974, 498 F.2d 1232. In so reversing, we remanded with instructions to the District Court to enter appropriate orders including: (1) enjoining all elections under the unconstitutional plan; (2) requiring termination at the earliest possible time of those serving under the plan; (3) requiring the Board to submit an acceptable plan without delay; (4) requiring further hearings and determinations on an expedited priority basis; and (5) the entry of such appropriate orders as would assure an opportunity for qualified electors to vote in 1974 for Board members under a constitutional plan, 498 F.2d at 1237.

Three days later, July 25, 1974, the District Court ordered the school board to submit a new plan of apportionment within thirty days and directed appellants to file any objections to the plan within five days thereafter.

The school board then employed Kenneth Selle, an expert in the field of constructing reapportionment plans, to devise a constitutionally acceptable plan of reapportionment. A preference was expressed for a plan which would establish a school board of fifteen members.

At a special meeting on August 19, 1974, Mr. Selle presented his final plan to the Board, explaining district boundaries and population statistics for each district. Board member Paul Angelloz requested that the people living in the Bayou Blue community, who had been assigned to District C under the proposed plan, be assigned to District B, along with the people in the town of Rosedale with whom they had historically voted. Mr. Selle indicated there would be no problem about making such an adjustment. The Board voted to approve such a change. This was the only change made by the Board in the proposed plan as submitted by Planner Selle.

Thereafter, on August 23, 1974, the Board submitted to the District Court the new plan which provided for the election of fifteen members from single member districts. The Board claimed the plan had a maximum population deviation of 4.2%, with five of the election districts having a substantial black majority population, five of the election districts having a substantial majority of white population, and five of the districts having a slight white population majority. Appellants filed their opposition on August 30, 1974, claiming that though the plan admittedly complied with one person-one vote it was racially gerrymandered. The Board subsequently became aware of a clerical error in the figures submitted with the plan, and on October 3, 1974, filed an amendment to the plan, which the Board claimed corrected the statistics with respect to District K so as to correctly show it as a majority black district. The

Board claimed that the plan with the amended figures provided for nine white population majority districts and six black population majority districts. Appellants filed a response to the amendment claiming that the Board's statistics were in error and that District K was in fact a white majority district and not a black majority one. On October 7, 1974, the Board filed a reply to appellants' opposition to the proposed reapportionment plan, discussing each of appellants' objections.

On April 22, 1975, the District Court, *without a hearing*, rendered judgment approving the Board's plan as amended and directed that immediate elections be held. Appellants timely noticed their appeal to this Court. Thereafter, the parties (plaintiff-appellants and the school board) filed a joint motion with the District Court requesting it to stay the effect of its judgment with respect to the calling of elections under the new plan pending the disposition of this appeal. The District Court granted the stay and the case comes to us in that posture.

By whatever name called, or however described, what the District Court really did was to grant a summary judgment.[1] The order approving the school board plan stated:

> After due and careful consideration of the plan proposed by the respondents, and of the objections advanced by the plaintiffs, the Court concludes that no evidentiary hearing is required. Accepting as true all of the plaintiffs' objections for the purpose of considering the proposed plan, the Court concludes that there is no legal or equitable reason to reject the plan proposed by respondents. In the opinion of this Court, the proposed plan complies with all constitutional requirements. It provides for 15 single member districts, with a maximum deviation from

the norm of 2.2 per cent. This reapportionment results in 5 districts with a substantial white majority; 5 with a substantial negro majority; and 5 with a slight white majority. There is no indication that districts were in any [way] gerrymandered for racial considerations, and there is no reason to conclude that the vote of any group has been diluted, intentionally or otherwise. The plan was not prepared by the respondent School Board. It was prepared by Mr. Kenneth Selle, President of Public Management of Louisiana, Inc., a man with outstanding qualifications and extensive experience in the field of voter apportionment. . . .

> The most that can be said of the objections raised by the plaintiffs is that they would have apportioned the area differently. The only constitutional requirement by which the Board is bound is that it adhere, as closely as practically possible, to the one man one vote principle; and that districts not be drawn in such a way as to result in the dilution of the vote of any person or group. . . . Our purpose is to see that the voting rights of the people affected are substantially protected and that constitutional principles are adhered to. The plan proposed by respondents accomplishes these purposes. There is, in the opinion of this Court, no constitutional infirmity in this plan.

The appellants object to the Board plan on three grounds. First, the plan proposed by Selle contained six majority black population districts; at the meeting to approve the plan one of the Board members requested a change in the boundary of District B; this change resulted in District B being reduced from 62% black population to 48% black population. Second, appellants contend that District K is a white majority district and had it been logically drawn it

---

1. The appellate mortality of summary judgments in this Circuit is well known. There was a rather automatic reaction in this Court that the District Court should have held a hearing before entering judgment. However, a thorough appraisal of the record leaves us with the conviction that if there were a remand there is nothing left to be heard. The plaintiff-appellants have alleged only that the plan was racially gerrymandered. Since this contention is without merit there is nothing left to be heard.

would have been a black majority district.[2] The third objection is that the boundary lines of Districts L, M, N, and O could have been drawn differently so as to create one additional black majority district.

Under the plan adopted by the Board, approved by the District Court, eleven of the fifteen School Board Districts have a black population ranging from 38% to 84%.

The situation in these eleven districts may be more particularly set forth as follows:

| District | Black Population |
|----------|-----------------|
| H | 84% |
| L | 75% |
| I | 71% |
| M | 68% |
| A | 61% |
| B | 48% |
| E | 44% |
| N | 43% |
| O | 42% |
| D | 39% |
| K | 38% |

The ultimate fact is that five districts are preponderantly black and in six others the black population is so substantial that its impact on the outcome of any election cannot be doubted.

■ The issue, then, on summary judgment, is whether these allegations, and the evidence with reference thereto, constitutionally mandated a hearing or a different result. We conclude that they did not.

■ Appellants' contention that Districts L, M, N, and O could have been drawn differently so as to produce an additional black majority district does not require reversal. A minority " 'is not constitutionally entitled to an apportionment structure designed to maximize its political advantage,' " *Gilbert v. Sterrett*, 5 Cir. 1975, 509 F.2d 1389, 1394. Members of a minority group have no federal right to be represented in legislative bodies in proportion to their numbers in the general population. *Beer v. United States*, ―― U.S. ――, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976).

In order for District K to conform with one person-one vote requirements, it was necessary to cross the Mississippi River and draw population from the city of Plaquemine. The boundary lines for District K cross the river in a straight line at the ferry and go directly into the city. We see nothing unconstitutional in this approach.

The assertions as to a racial gerrymander are reduced to the fact that the board made a change in the boundary of District B as submitted by the planner which did change the racial composition of that District from majority black to majority white. There is no indication, however, that it was motivated by racial reasons. On the contrary, the record shows that it was done to preserve previously existing associations.

■ Before a properly apportioned redistricting plan may be declared to be constitutionally impermissible it must be shown that it is (1) a racially motivated gerrymander, or a plan drawn along racial lines[3] or (2) that designedly or otherwise the plan would operate to minimize or cancel out the

---

2. The Mississippi River bisects Iberville Parish and thus presents considerable problems for any planner. In order to conform with one person-one vote requirements it was necessary that District K be made up of areas on both sides of the River. Appellants contend that there were three areas, two black and one white, across the River, any of which the planner could have selected to make up District K. The neighborhood selected, they contend, was the one with the white majority. Appellants argue that the logical area to be selected was at the ferry-crossing, the area encompassing the only transportation link between the two sides of the River. Had this black neighborhood been selected, the district would have had a black population majority. The board con-

tends that District K is a black majority district and that appellants are mistaken in their figures. Since the District Court granted a summary judgment, we must assume that the appellants' contention that District K is majority white is correct and a reading of the District Court order indicates that it likewise so assumed.

3. *See Wright v. Rockefeller*, 1964, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512; *Gomillion v. Lightfoot*, 1960, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110; *Howard v. Adams County Board of Supervisors*, 5 Cir. 1972, 453 F.2d 455, *cert. denied*, 407 U.S. 925, 92 S.Ct. 2461, 32 L.Ed.2d 812.

voting strength of racial or political elements of the voting population.[4]

A change in the boundary of one district out of fifteen hardly falls into either of the prohibited categories listed above. The affidavit of one of the present black members of the board states that the "Board voted on the plan as modified without ever seeing statistics which showed the racial effect of the change in Districts B and C."[5] The incumbent board member representing District B objected to the way the district was drawn because it did not include the Bayou Blue area that historically had voted with the Rosedale community which was also in District B. There was no showing of any racial animus in connection with this change.

As we have previously stated "[t]here is no agreement on whether the political interests of a minority group are best maximized by an overwhelming majority in a single district, bare majorities in more than one district or a substantial proportion of the voters in a number of districts," *Turner v. McKeithen*, 5 Cir. 1973, 490 F.2d 191, 197 n. 24.

It is obviously true that plaintiffs-appellants preferred a plan different to that which was proposed and approved. It is equally true that the District Court, as it appears in the quoted Order of approval, decided the case on the assumption fostered by the plaintiffs, *i. e.*, there were only five black majority districts. Thus no disputed issue of material fact played any part in the result. The case was ripe for decision on the *vel non* constitutionality of the plan.

■ This was a court ordered plan of reapportionment and the Voting Rights Act is not controlling, *East Carroll Parish School Board v. Marshall*, —— U.S. ——, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976). Moreover, the reapportionment divided the county into single member districts as set forth in *Marshall*.

Our analysis of the record and of the applicable law leaves us of the opinion that plaintiffs have not met their burden of demonstrating that this School Board reapportionment violates Constitutional standards.

The Judgment of the District Court is AFFIRMED.

---

4. *See Burns v. Richardson*, 1966, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376.

5. App. p. 28–29 (affidavit of Thomas J. Edwards).