**Walter H. CASTAY, Jr., et al.**

v.

**ST. JOHN THE BAPTIST PARISH POLICE JURY et al.**

**Civ. A. No. 79–2150.**

United States District Court, E. D. Louisiana.

Jan. 11, 1980.

---

· Jules A. Carville, III, Richard L. Edrington, Bernard J. Rice, III, Carville & Edrington, Laplace, La., for plaintiffs.

Daniel E. Becnel, Jr., C. William Bradley, Jr., Robert R. Faucheux, Jr., Barry J. Landry, Reserve, La., for all defendants except Rudolph S. Sorapuru, Sr.

Charles R. Jones, New Orleans, La., amicus curiae brief, for unsuccessful applicants for intervention.

Joel T. Chaisson, Destrehan, La., for defendant Rudolph S. Sorapuru, Sr.

## MEMORANDUM OPINION

ROBERT F. COLLINS, District Judge.

■ Complainants filed this action on June 15, 1979, alleging that the rapid population growth of Laplace, the largest municipality in the Parish of St. John the Baptist (hereinafter St. John Parish), State of Louisiana, coupled with the failure of the defendant Police Jury [1] to reapportion the Police Jury election districts since 1975,[2] resulted in a gross dilution of plaintiffs' voting rights and violated the principle of one-person, one-vote. *Reynolds v. Sims*, 377 U.S. 533, 579, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). At the time the complaint was filed, the St. John Parish Police Jury was

---

1. The Police Jury is a parish governing authority in Louisiana. La.Rev.Stat.Ann. §§ 33:1221–1247.13 (West 1951 and West Supp.1979). As such, the defendant Police Jury is a local government unit of general responsibility. *See Avery v. Midland County*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).

2. The 1975 St. John Parish reapportionment was ordered by Judge Frederick Heebe, *see Troxler v. St. John the Baptist Parish Police Jury*, No. 71–1661 (E.D.La. July 31, 1975). For a prior history of this cause, *see Troxler v. St. John the Baptist Parish Police Jury*, 331 F.Supp. 222 (E.D.La.1971), *aff'd*, 469 F.2d 647 (5th Cir. 1972).

comprised of ten police jurors,[3] each of whom were named as individual defendants. Plaintiffs alleged that they would suffer irreparable injury if the Police Jury election districts were not reapportioned prior to the October 27, 1979 primary election.

Initially the St. John Parish Police Jury denied that it was necessary to reapportion the parish, and by a five to five vote the Police Jury decided that reapportionment was not appropriate until the promulgation of the 1980 federal census figures. However, on July 2, 1979, defendant Police Jury commissioned Robert L. Metzger and Metzger. and Associates to undertake a special census (hereinafter Metzger census) of St. John Parish. The Metzger census showed that since 1974, the Laplace election districts had experienced substantial population increases.[4] The Court adopts the Metzger census and finds that said census is an accurate reflection of the present population of St. John Parish.[5]

After the results of the Metzger census were promulgated, the defendant Police Jury remained deadlocked on the issue of reapportionment. Plaintiffs thereafter, by leave of court, amended their complaint and prayed for a preliminary injunction restraining the election of police jurors in the October 27, 1979 primary election.

On October 1, 1979, plaintiffs' motion for a preliminary injunction came on for hearing. At the hearing, the Court adopted Robert L. Metzger as its expert for the remainder of this cause.[6] After the presentation of evidence, the parties agreed to and executed a consent decree, adopted as an order of this Court, which provides in pertinent part:

1) Pursuant to Louisiana Revised Statutes Annotated § 33:1221 (West Supp. 1979), the defendants agree that the Police Jury will amend and adopt by ordinance an expansion of the present ten (10) member Police Jury to eleven (11) members.

2) This amended ordinance, expanding the Police Jury to eleven (11) members, shall be adopted on or before October 15, 1979.

3) Defendant Police Jury will and does hereby agree to reapportion its membership districts on a one-man, one-vote basis, and shall submit such district reappor-

3. See La.Rev.Stat.Ann. § 33:1221 (West Supp. 1979), which provides in pertinent part:

A. Except as hereinafter provided in Subsection B of this Section, every parish governing authority in Louisiana organized under the police jury system of government, shall by ordinance, establish the size of their bodies provided that no police jury shall have less than five members nor more than fifteen members, or the number of members authorized for that jury on or before May 13, 1974, whichever is greater . . . .

C. Notwithstanding any provision of this section to the contrary, the police jury of the parish of St. John the Baptist is authorized to increase the number of members of said body by ordinance from nine to ten members; provided, however, that each member serving on said police jury shall represent as nearly as possible an equal number of persons.

4. In the subsequent chart of the existing Police Jury election districts, the Laplace districts are numbered 3, 4, 5, and 6. The chart provides a comparison of parish wide population figures in 1974 and 1979. The 1974 population figures are derived from the 1975 reapportionment plan, note 2 supra. The 1979 population figures are derived from the Metzger census:

| DISTRICT | 1974 POPULATION | 1979 POPULATION | % CHANGE |
|---|---|---|---|
| 1 | 2,199 | 2,038 | − 7.9% |
| 2 | 2,204 | 2,014 | − 9.4% |
| 3 | 2,659 | 2,880 | + 8.3% |
| 4 | 2,678 | 3,326 | +24.2% |
| 5 | 2,535 | 4,005 | +57.9% |
| 6 | 2,618 | 5,157 | +96.9% |
| 7 | 2,534 | 2,793 | +10.2% |
| 8 | 2,752 | 2,809 | + 2.0% |
| 9 | 2,418 | 2,871 | +18.7% |
| 10 | 2,265 | 2,381 | + 5.1% |
| TOTAL | 24,862 | 30,274 | +21.7% |

5. Prospective intervenors in their Amicus Curiae brief, see record, document number 25, have challenged the validity of the Metzger census, alleging that west bank residents of St. John Parish were undercounted. (The Mississippi River flows through the parish dividing it into the east and west bank.) Based on the testimony presented on October 1, 1979, the Court finds that residents of the west bank were accurately counted in the Metzger census.

6. Robert L. Metzger's aid has been invaluable to the Court in drawing up alternative reapportionment plans and demographically analyzing all plans under consideration.

tionment plan to this Court and to the United States Department of Justice, on or before October 16, 1979.

4) Said reapportionment plan shall provide that in not less than four (4) membership districts, a majority of the population shall be minority group members.

5) The October 27, 1979 Police Jury election, by consent of all parties, will be and is hereby enjoined and postponed.

6) This decree shall be enforced and interpreted in such a manner that all necessary steps be taken to hold the Police Jury elections so as to avoid the necessity of the extension of the terms of the present Police Jury incumbents.[7]

Pursuant to the Court's order, on October 11, 1979, defendants enacted an ordinance enlarging the size of the Police Jury to eleven members.[8] On October 15, 1979, defendants submitted an eleven member reapportionment plan.[9] The following day, Rudolph S. Sorapuru, one of the defendant police jurors, filed a supplemental answer and opposition to the submitted reapportionment plan.[10] Sorapuru alleged that the submitted reapportionment plan diluted minority representation and that defendants' gerrymandering of districts increased Laplace's representation at the expense of the west bank communities of Lucy and Edgard. None of the other parties in this matter have opposed the eleven member reapportionment plan.

The Court took defendants' reapportionment plan under advisement. Alternative plans were prepared by Robert L. Metzger at the Court's direction.[11] After due consideration of alternative reapportionment plans and the applicable law, the Court, on November 27, 1979, held that defendants had complied with the order of October 1, 1979. The Court therefore ordered the immediate implementation of the eleven member reapportionment plan submitted on Oc-

tober 15, 1979 by the defendant St. John the Baptist Parish Police Jury.[12]

The problems involved with reapportioning St. John Parish are complicated by the parish's unique geography and demography. The Mississippi River divides the parish. The west bank is rural in character and has not experienced the economic or population growth presently occurring on the east bank. The east bank was historically rural, but has recently undergone substantial growth because of an influx of industry and suburbanites who commute to New Orleans. On the east bank, Laplace has experienced the most significant growth, and the Metzger census shows that persons residing in Laplace comprise 50.21% of the parish's total population. A total of 30,274 persons live in St. John Parish, with minorities constituting 38.54% of the total population. The heaviest concentration of minorities occurs on the west bank. On the east bank, the minority population is situated in Laplace, Reserve, and Garyville.

■ The Court holds that defendants' eleven member plan [13] is constitutional. The Police Jury proposed and voted for the plan by a vote of eight to two, with Sorapuru and Brent Tregre the only dissenting police jurors. The plan satisfies the one-person, one-vote principle. The deviation range is ±4.4%. The greatest deviation occurs in election district number 6 where the population is 2.4% greater than the ideal district size. Geographically, the plan crosses the Mississippi River at Laplace. Election district number 1 joins Laplace on the east bank with the west bank communities of Lucy and Tigerville. The October 1, 1979 consent order provided that the majority of the population shall be minority group members in at least four of the eleven districts. Under the plan, in election districts 1, 2, and 7, minorities constitute 92.4%, 81.2%, and 86.1%, respectively of the

7. *See* record, document number 24.

8. *Id.*, document number 33.

9. *Id.*, document number 28.

10. *Id.*, document number 30.

11. *Id.*, document numbers 35, 36.

12. *Id.*, document number 37.

13. *Id.*, document number 28.

population. Thus, in these districts, minority voting strength will be substantial. In two other election districts, 9 and 10, minorities constitute 51.5%, and 52.4%, respectively of the population. Although these percentages may not be sufficient to assure the election of minority representatives, the Court finds that minority political participation in districts 9 and 10 will be adequately safeguarded. Thus, the Court holds that the submitted legislative reapportionment plan sufficiently protects minority voting rights because "a minority group is not constitutionally entitled to an apportionment structure designed to maximize its political advantage." *Turner v. McKeithen*, 490 F.2d 191, 197 (5th Cir. 1973). *See also Beer v. United States*, 425 U.S. 130, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976); *Whitcomb v. Chavis*, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); *Panior v. Iberville Parish Sch. Bd.*, 536 F.2d 101 (5th Cir. 1976); *Gilbert v. Sterrett*, 509 F.2d 1389 (5th Cir. 1975).

■ "Ordinarily, a plan of reapportionment enacted by a local governing body, such as the police jury, which meets the mathematical requirements of the one-man, one-vote formula, is presumed to be valid. The challenging party then has the heavy burden of proving that the plan is impermissible for any reason, as, for example, if it dilutes minority voting strength." *Troxler v. St. John the Baptist Parish Police Jury*, 331 F.Supp. 222, 223 (E.D.La.1971), aff'd, 469 F.2d 647 (5th Cir. 1972). In the instant matter, Rudolph Sorapuru, an incumbent police juror,[14] has challenged the legislative plan, alleging that the plan dilutes minority voting strength and enhances the strength of Laplace at the expense of the west bank communities of Lucy and Edgard because of defendants' gerrymandering.

■ In determining whether defendants' reapportionment plan dilutes minority voting strength, the Court will consider the criteria set forth in *Zimmer v. McKeithen*, 485 F.2d 1297 (5th Cir. 1973) (en banc), [hereinafter *Zimmer*], aff'd sub nom., *East Carroll Parish School Board v. Marshall*, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976) and *Nevett v. Sides*, 571 F.2d 209 (5th Cir. 1978) [hereinafter *Nevett*].[15] To sustain a finding that a reapportionment plan impermissibly dilutes minority voting strength, the challenging party must prove that "the influence of a given racial group has been distorted because its members have been denied equal access to political processes such as party nominating procedures, registration, and, of course, voting." *Nevett*, 571 F.2d at 216. Some of the primary factors discussed in *Zimmer* and *Nevett* relevant to the issue of denial of access or dilution are: "the group's accessibility to political processes (such as the slating of candidates), the responsiveness of representatives to the 'particularized interests' of the group, . . . and the effect of past discrimination upon the group's participation in the election system." *Nevett*, 571 F.2d at 217, citing *Zimmer*, 485 F.2d at 1305. The Court holds that Sorapuru, the party challenging defendants' reapportionment plan, has not sustained his "burden of proving that the plan is impermissible." *Troxler v. St. John the Baptist Parish Police Jury*, 331 F.Supp. 222, 223 (E.D.La.1971), aff'd, 469 F.2d 647 (5th Cir. 1972).

■ The Court finds that there has been no showing that minorities have been denied access to the political processes in St. John Parish. Currently, three of the ten

---

**14.** Sorapuru currently represents election district number 1 which is located entirely on the west bank of the Mississippi River and includes the communities of Lucy, Tigerville, and Edgard. The new election district number 1 will now include Lucy and Tigerville and a part of Laplace.

**15.** *Zimmer* and *Nevett* are both distinguishable from the case at bar. In *Zimmer* and *Nevett*

minorities challenged the constitutionality of reapportionment plans containing *at large* election districts. The reapportionment plan at bar instead creates eleven *single member* election districts. Nevertheless, the standards enunciated in *Zimmer* and *Nevett* are illustrative of the factors which should be proved by parties challenging the instant reapportionment plan.

police jurors are black.[16] Under the plan at bar, minorities will wield substantial political influence in at least five of the eleven police juror election districts. If minority citizens are effectively organized, given their numbers in all districts except new election districts 5, 5 and 6,[17] and 6, police jurors of necessity will be responsive to minority interests. Finally, it cannot be disputed that minorities in St. John Parish have been victims of past discrimination. The voting registration efforts of the late 1960's have, to some extent, ameliorated the effect of past discrimination as related to the political processes. Past discrimination notwithstanding, the Court holds that the proposed single member eleven district reapportionment plan is a positive response to past discrimination practices in that the plan prevents the dilution of and enhances minority voting strength.

██ Sorapuru also urges that the new plan represents gerrymandering by the Police Jury because the plan increases Laplace's Police Jury representation at the expense of the west bank communities of Lucy and Edgard. The Court holds that Laplace's increased representation results from parish demographic changes rather than from Police Jury gerrymandering. Under the 1975 reapportionment plan,[18] police jurors from election districts 1 and 2 represented the persons living on the west bank of St. John Parish. The figures from the Metzger census show that since 1974, the population in election district 1 declined by 7.9% and the population in election district 2 declined by 9.4%. On the other hand, Laplace election districts have experienced significant population growth since 1974: election district 3, up 8.3%; election district 4, up 24.2%; election district 5, up 57.9%; and election district 6, up 96.9%. These figures clearly demonstrate that demographic factors are responsible for Laplace's increased representation. The increased representation for Laplace does come at the expense of the west bank. However, gerrymandering by the Police Jury is not the cause. The cause may be more accurately shown by an analysis of the population figures.[19] Since 1974, of the ten police juror election districts, only the two west bank districts have lost population, while the other eight election districts have experienced population growth.

Accordingly, the Court will and hereby does ADOPT and ORDER the immediate implementation of the eleven member reapportionment plan submitted on October 15, 1979 by the defendant St. John the Baptist Parish Police Jury. The Court further ORDERS defendant St. John the Baptist Parish Police Jury to hold an open primary election on April 5, 1980 and to hold a general election on May 17, 1980. Finally, the Court ORDERS that all newly elected police jurors shall take office as provided by state law.

16. Rudolph Sorapuru represents police juror election district 1; Haston Lewis represents police juror election district 2; and Richard D. Wolfe represents police jury election district 7. Under the new plan, Lewis and Wolfe would represent essentially the same districts. Sorapuru's district has been altered geographically in that it now includes a part of Laplace. Nevertheless, racially Sorapuru's district still consists of an overwhelming number of minority group members.

17. The election district in Laplace bordered by Airline Highway, Carrollwood Avenue, Highland Drive, and Madewood Drive, has been identified on the maps submitted by the Police Jury as election district 5 and 6. Geographically, election district 5 and 6 is a separate and distinct election district, located between election district 5 and election district 6.

18. See note 4 supra.

19. Id.