# EAST CARROLL PARISH SCHOOL BOARD et al. *v.* MARSHALL

No. 73–861. Argued January 21, 1976—Decided March 8, 1976

*John F. Ward, Jr.,* argued the cause and filed a brief for petitioners.

*Stanley A. Halpin, Jr.,* argued the cause for respondent. With him on the brief were *Jack Greenberg* and *Eric Schnapper.*

*Brian K. Landsberg* argued the cause for the United States as *amicus curiae.* With him on the brief were *Solicitor General Bork, Assistant Attorney General Pottinger, John C. Hoyle,* and *Jessica Dunsay Silver.**

Per Curiam.

The sole issue raised by this case is how compliance with the one-man, one-vote principle should be achieved in a parish (county) that is admittedly malapportioned.

Plaintiff Zimmer, a white resident of East Carroll Parish, La., brought suit in 1968 alleging that population disparities among the wards of the parish had unconstitu-

---

*\*Paul R. Dimond* and *William E. Caldwell* filed a brief for the Lawyers' Committee for Civil Rights Under Law as *amicus curiae.*

tionally denied him the right to cast an effective vote in elections for members of the police jury [1] and the school board. See *Avery* v. *Midland County*, 390 U. S. 474 (1968). After a hearing the District Court agreed that the wards were unevenly apportioned and adopted a re-apportionment plan suggested by the East Carroll police jury calling for the at-large election of members of both the police jury and the school board. [2] The 1969 and 1970 elections were held under this plan.

The proceedings were renewed in 1971 after the District Court, apparently *sua sponte*, instructed the East Carroll police jury and school board to file reapportionment plans revised in accordance with the 1970 census. In response, the jury and board resubmitted the at-large plan. Respondent Marshall was permitted to intervene on behalf of himself and all other black voters in East Carroll. Following a hearing the District Court again

---

[1] In Louisiana, the police jury is the governing body of the parish. Its authority includes construction and repair of roads, levying taxes to defray parish expenses, providing for the public health, and performing other duties related to public health and welfare. La. Rev. Stat. Ann. § 33:1236 (1950 and Supp. 1975).

[2] Prior to 1968, Louisiana law prohibited at-large elections of members of police juries and school boards. In July 1968, the Governor of Louisiana approved enabling legislation permitting the at-large election of parish police juries and school boards. La. Laws 1968, Act No. 445, codified at La. Rev. Stat. Ann. §§ 33:1221, 33:1224 (Supp. 1975); La. Laws 1968, Act No. 561, codified at La. Rev. Stat. Ann. §§ 17:71.1–17:71.6 (Supp. 1975).

Both Acts were submitted to the United States Attorney General pursuant to § 5 of the Voting Rights Act of 1965, 79 Stat. 439, as amended, 42 U. S. C. § 1973c, and both were rejected because of their discriminatory effect on Negro voters. See letters, June 26, 1969, and Sept. 10, 1969, from Jerris Leonard, Assistant Attorney General, Civil Rights Division, to Jack P. F. Gremillion, Attorney General of Louisiana. Indeed, East Carroll Parish was cited as exemplifying the dilution in black ballot strength that at-large voting may cause. Letter of Sept. 10, 1969.

approved the multimember arrangement. The intervenor appealed,[3] contending that at-large elections would tend to dilute the black vote in violation of the Fourteenth and Fifteenth Amendments and the Voting Rights Act of 1965.

Over a dissent, a panel of the Court of Appeals affirmed,[4] but on rehearing en banc, the court reversed.[5] It found clearly erroneous the District Court's ruling that at-large elections would not diminish the black voting strength of East Carroll Parish. Relying upon *White* v. *Regester*, 412 U. S. 755 (1973), it seemingly held that multimember districts were unconstitutional, unless their use would afford a minority greater opportunity for political participation, or unless the use of single-member districts would infringe protected rights.

We granted certiorari, 422 U. S. 1055 (1975), and now affirm the judgment below, but without approval of the constitutional views expressed by the Court of Appeals.[6]

---

[3] The original plaintiff, Zimmer, was allowed to withdraw from the case.

[4] *Zimmer* v. *McKeithen,* 467 F. 2d 1381 (CA5 1972).

During pendency of the appeal in the court below, the District Court purported to withdraw its order approving the at-large plan and to substitute in its stead a complex redistricting plan submitted by intervenor Marshall. The Court of Appeals vacated the order on the ground that when the appeal was filed, the District Court lost jurisdiction over the case. *Id.,* at 1382.

[5] *Zimmer* v. *McKeithen,* 485 F. 2d 1297 (CA5 1973).

[6] The Government has filed an *amicus* brief, in which it argues that the preclearance procedures of § 5 of the Voting Rights Act of 1965, must be complied with prior to adoption by a federal district court of a reapportionment plan submitted to it on behalf of a local legislative body that is covered by the Act. This issue was not raised by the petitioners nor did respondent file a cross-petition. In any event, we agree with the Court of Appeals, *Zimmer* v. *McKeithen,* 467 F. 2d, at 1383; *Zimmer* v. *McKeithen,* 485 F. 2d, at 1302 n. 9, that court-ordered plans resulting from equi-

See *Ashwander* v. *TVA,* 297 U. S. 288, 346–347 (1936) (Brandeis, J., concurring).

The District Court, in adopting the multimember, at-large reapportionment plan, was silent as to the relative merits of a single-member arrangement. And the Court of Appeals, inexplicably in our view, declined to consider whether the District Court erred under *Connor* v. *Johnson,* 402 U. S. 690 (1971), in endorsing a multimember plan, resting. its decision instead upon constitutional grounds. We have frequently reaffirmed the rule that when United States district courts are put to the task of fashioning reapportionment plans to supplant concededly invalid state legislation, single-member districts are to be preferred absent unusual circumstances. *Chapman* v. *Meier,* 420 U. S. 1, 17–19 (1975); *Mahan* v. *Howell,* 410 U. S. 315, 333 (1973); *Connor* v. *Williams,* 404 U. S. 549, 551 (1972); *Connor* v. *Johnson, supra,* at 692. As the en banc opinion of the Court of Appeals amply demonstrates, no special circumstances here dictate the use of multimember districts. Thus, we hold that in shaping remedial relief the District Court abused

---

table jurisdiction over adversary proceedings are not controlled by § 5. Had the East Carroll police jury reapportioned itself on its own authority, clearance under § 5 of the Voting Rights Act would clearly have been required. *Connor* v. *Waller,* 421 U. S. 656 (1975). However, in submitting the plan to the District Court, the jury did not purport to reapportion itself in accordance with the 1968 enabling legislation, see n. 2, *supra,* and statutes cited therein, which permitted police juries and school boards to adopt at-large elections. App. 56. Moreover, since the Louisiana enabling legislation was opposed by the Attorney General of the United States under § 5 of the Voting Rights Act, the jury did not have the authority to reapportion itself. See n. 2, *supra;* Tr. of Oral Arg. 13–14, 31–32, 43–44. Since the reapportionment scheme was submitted and adopted pursuant to court order, the preclearance procedures of § 5 do not apply. *Connor* v. *Johnson,* 402 U. S. 690, 691 (1971).

its discretion in not initially ordering a single-member reapportionment plan.

On this basis, the judgment is

*Affirmed.*

MR. CHIEF JUSTICE BURGER, concurring.

I consider it unnecessary to reach the question discussed, *ante,* at 638–639, n. 6. It was, as the Court observes in n. 6, "not raised by the petitioners, nor did respondent file a cross-petition." The scope of § 5 of the Voting Rights Act is an important matter, and I would not undertake to express any view on what the Court discusses by way of dicta in n. 6.