Ernest **CALDERON** et al.,
**Plaintiffs-Appellants,**

v.

D. Kenneth **McGEE** et al.,
**Defendants-Appellees.**

No. 76–2264.

United States Court of Appeals,
Fifth Circuit.

Nov. 14, 1978.

Rehearing Granted Feb. 16, 1979.

Linda K. Hanten, Vilma S. Martinez, Joaquin G. Avila, Mexican American Legal Defense & Ed. Fund, San Francisco, Cal., for plaintiffs-appellants.

Minor L. Helm, Jr., Nina B. Eldridge, Waco, Tex., for defendants-appellees.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

RONEY, Circuit Judge:

This is an appeal from a district court judgment finding unconstitutional dilution of votes of minority black and Mexican-American residents of Waco, Texas, and ordering an election plan by which five trustees for the Waco Independent School District are elected from single member districts and two trustees are elected on an at-large basis.

Defendants admitted the unconstitutionality of the existing all at-large plan and are satisfied with the district court judgment which embodies an election plan submitted by them.

The plaintiffs appealed on the ground that the district court abused its discretion in adopting a plan which permits two trustees to be elected at large, rather than requiring all single member districts.

The first issue in a case of this kind is whether the election plan was the result of a valid exercise of legislative power, approved by the court, or whether the plan constituted a court-devised remedy. If a court-approved legislative enactment, the plan will fall only if unconstitutional; if a judicially imposed court-ordered plan, it is subject to more stringent standards requiring all single member election districts in the absence of special circumstances. *East Carroll Parish School Board v. Marshall,* 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976).

After oral argument on appeal, we withheld decision until the United States Supreme Court decided *Wise v. Lipscomb,* —— U.S. ——, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1978). The parties have since filed supplemental briefs addressing the effect of that decision on this case.

Holding that the legislative acts of the School District satisfied the requirement of a court-approved plan within the scope of *Wise v. Lipscomb* and that the plan is not unconstitutional, we affirm.

Plaintiffs are black and Mexican-American residents and registered voters in the Waco Independent School District. They brought this suit in 1974 alleging violations of their civil rights under 42 U.S.C.A. § 1983, and the Fourteenth and Fifteenth Amendments. The defendants are the superintendent of the Waco Independent School District and members of the Board of Trustees of the district. The elected school trustees of the WISD are responsible for the policies of the district, including the choice of electoral schemes for the selection of school trustees.

According to the 1970 census figures the population of the WISD is 95,273 persons, of whom 19.4% are black and 8.7% are Mexican-Americans. The total minority population is nearly 28%. At the time plaintiffs sued, all trustees of the WISD were elected at-large, with no residency requirements for terms of six years. No party contests the finding by the district court that

> the at-large election method, overlaid, as it is, upon the historic, cultural, economic and political realities of the black and Mexican-American communities in Waco, results in a marked dilution of black

and Mexican-American votes. . . . [and] the lack of equal access by blacks and Mexican-Americans to the political processes leading to the election of school board trustees is an empirically obvious political reality. This lack of equal access, resulting from past discrimination, compels a finding that the present at-large election of school board trustees violated the Equal Protection Clause of the Fourteenth Amendment.

No. W–74–CA–2 (W.D.Tex. Feb. 26, 1976). The district court further observed that the WISD agrees that single member districts could enhance the opportunities for Mexican-Americans and blacks to be elected to the Board of Trustees. In view of its findings, the district court ordered defendants to prepare and submit proposals to bring their election procedures into compliance with applicable constitutional requirements. In special sessions the superintendent and trustees of the school district drafted a 4–3 election plan by which four trustees would be elected from single member districts and three on an at-large basis. This plan was submitted to the court for approval.

The district court rejected as constitutionally insufficient defendants' proposal of an election plan providing for four trustees to be elected from single member districts and three on an at-large basis. Declining to consider plaintiffs' proposed plan requiring the election of all school trustees from single member districts, the court directed defendants to submit an alternative plan to remedy the present dilution of black and Mexican-American votes in the election of school board trustees. Defendants then submitted a 5–2 plan in which five trustees would be elected from single member districts and two trustees would be elected at-large.

After a hearing on this plan, the district court found that

[t]he District's proposed plan appears to be fairly drawn in such a way that it can be reasonably expected to open the political processes which have heretofore been virtually closed to Black and Mexican-American voters.

No. W–74–CA–2 (W.D.Tex. March 29, 1976). Further, the district court concluded that the election plan submitted by the School District satisfied constitutional requirements.

Following the approval of the election plan by the district court, the School District adopted a formal notice and order of election in accordance with Texas laws to schedule elections under the new election scheme. In the final judgment order the district court expressly approved the election notice and order adopted by the Board and directed the parties to take appropriate steps to implement the election plan in conformity with the Voting Rights Act of 1965, as amended.

Review of the recent opinion in *Wise v. Lipscomb, supra,* makes clear that the actions taken by the Waco Independent School District were valid acts of a governing body. In *Wise,* in response to a district court's finding of unconstitutional dilution of the voting strength of blacks in the election of city council members, the City of Dallas passed a formal resolution to announce that it intended to enact an ordinance providing for eight council members to be elected from single member districts and the remaining three members, including the mayor, to be elected at-large. After extensive hearing on this proposed election scheme the district court found it constitutional. Subsequent to the district court's approval, the Dallas City Council enacted an ordinance which embodied the 8–3 election plan. The district court declared the ordinance enacted by the council to be a valid legislative act, not subject to the constraints of *East Carroll Parish School Board v. Marshall,* 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976); *Lipscomb v. Wise,* 399 F.Supp. 782 (N.D.Tex.1975). Viewing the district court's judgment as a misreading of *East Carroll Parish,* this Court reversed on the ground that the remedy adopted by the district was in actuality a court-ordered remedy. *Lipscomb v. Wise,*

551 F.2d 1043 (5th Cir. 1977). Applying the requirements of *East Carroll Parish,* this Court ruled that district court was required to order single member election districts, no special circumstances being demonstrated.

On review, the Supreme Court ruled the action taken by the Dallas City Council a valid exercise of its legislative powers as the governing body of Dallas. Noting this Court had not disagreed with the district court's conclusion that the council action was valid, the Supreme Court said it was in no position to overturn the district court's acceptance of the city ordinance as a valid legislative response to the court's finding of an unconstitutional election scheme. While not central to its ruling, the Supreme Court further observed that a city-wide election was held on the 8–3 plan during the pendency of the appeal to the Fifth Circuit. The electorate approved the election plan, thus incorporating it into the City Charter. *Wise v. Lipscomb, supra,* —— U.S. at ——, n. 3, 98 S.Ct. 2493.

As in *Wise,* after an indication of approval by the district court, the School District here adopted a formal notice and order of elections in accordance with Texas laws. It does not appear from the record that the School District would have had to take any steps in addition to what it did to perfect a change in its election scheme, had there been no court action. As alleged in plaintiffs' complaint and admitted in defendants' answer, the School District was responsible for selecting the scheme for electing school trustees. *See* Tex.Stat.Ann. art. 2775b and Tex.Educ.Code Ann. art. 23.11. No change in the city charter and no referendum appears to have been required to effect such changes in the election system of the School District.

■ It is clear that the School District was authorized by state statute to select the system for the election of its school trustees. Texas laws permitted the School District to construct and alter the election plan pursuant to a notice and order procedure.

The School District complied with all statutorily required procedures. In addition, the district court approved the notice and order containing the 5–2 election plan. The School District's implementation of the hybrid election plan, therefore, constituted a valid exercise of legislative authority by the appropriate governing body, well within the purview of *Wise v. Lipscomb, supra.* In a post-argument submission it has been represented by the defendants that the School District submitted its election plan to the Civil Rights Division of the Department of Justice in accordance with "preclearance" requirements of section 5 of the Voting Rights Act of 1965, as amended. The Justice Department interposed no objection to the election plan.

■ A review of the adopted plan reveals no constitutional infirmity. Two of the proposed districts could be controlled by minority voters since they had total minority populations of slightly more than 50%. Three of the proposed districts were well over 50% Anglo. This plan assures that at least two of the trustees will be elected from districts in which the majority of the voters are blacks and Mexican-Americans. Election of two minorities to a board consisting of seven members would result in 28% minority representation and would reflect the approximate 28% minority population in the WISD. In addition, the minorities would have a chance to be a significant factor in the two at-large elections.

AFFIRMED.