## McDANIEL ET AL. v. SANCHEZ ET AL.

No. A–126. Decided August 14, 1980

MR. JUSTICE POWELL, Circuit Justice.

This is an application for a stay of the judgment of the United States Court of Appeals for the Fifth Circuit, pending consideration of a petition for certiorari. Applicants are officials of Kleberg County, Tex., who have been ordered by the United States District Court for the Southern District of Texas to proceed immediately with procedures for the "preclearance" of a new apportionment plan for county commissioner precincts under § 5 of the Voting Rights Act of 1965, 79 Stat. 439, as amended, 42 U. S. C. § 1973c.

### I

This suit began in 1978 as a class action challenging the boundary lines of the four county commissioner precincts in Kleberg County. Plaintiffs claimed that these precincts, as drawn, violated the one-person, one-vote principle and unconstitutionally diluted the voting strength of Mexican-Americans. After a trial, the District Court found that the precincts did violate the one-person, one-vote principle, but ruled that plaintiffs had failed to meet their burden of proof on the dilution claim.

The District Court then directed defendants to submit a proposed new apportionment plan. That plan was drawn by a university professor selected by the County Commissioners and approved for submission to the District Court by the Commissioners. The District Court approved the plan and rejected an argument by plaintiffs that preclearance under the Voting Rights Act was necessary, relying on *East Carroll Parish School Board* v. *Marshall*, 424 U. S. 636 (1976) *(per curiam)*. In *East Carroll* this Court stated that "court-ordered plans resulting from equitable jurisdiction over adversary proceedings are not controlled by § 5." *Id.*, at 638, n. 6.

On appeal, the Fifth Circuit reversed in a *per curiam* opinion. 615 F. 2d 1023 (1980). It relied on this Court's later decision in *Wise* v. *Lipscomb*, 437 U. S. 535 (1978), for the proposition that plans drawn up or approved by a legislative body are "legislative" plans even if submitted in response to a court order. As a result, the Court of Appeals found that the plan in this case is legislative and concluded that it is subject to the preclearance provisions of § 5. The court remanded the case for appropriate action and the District Court then ordered applicants to begin the § 5 procedures "immediately." On July 25, 1980, the Fifth Circuit denied a stay pending consideration of a petition for a writ of certiorari.

## II

The preclearance procedures at issue here require either an action in the District Court for the District of Columbia for a declaratory judgment that the new plan is not racially discriminatory, or submission of the plan to the Attorney General of the United States, who may interpose an objection within 60 days. 42 U. S. C. § 1973c. See *Allen* v. *State Board of Elections*, 393 U. S. 544, 548–550 (1969). Applicants will argue in their petition for certiorari that they should not be required to follow these procedures because this apportionment plan was court-ordered and was not the prod-

uct of a legislative action. They argue in this application that their petition is likely to be granted because the decisions of this Court have left unsettled the principles that determine which apportionment plans are essentially "legislative," as opposed to "judicial," in nature. They further argue that a stay is necessary in order to prevent their claim from becoming moot before it can be heard.

In *Wise* v. *Lipscomb, supra,* we faced the question whether a plan for the election of members of the City Council of Dallas was judicial or legislative. The existing system of electing members at large had been declared unconstitutional, and the city had been given an opportunity by the court to produce a substitute plan. Because the plan submitted by the City Council, and approved by the District Court, included a provision for the election of several council members at large, it was necessary to decide whether the plan was invalid under *East Carroll, supra,* in which we held that *judicially* imposed plans should not, absent special circumstances, include multimember districts.

The Court in *Wise* decided that the Dallas plan was legislative, rather than judicial, and therefore was exempt from the higher level of scrutiny accorded to judicial plans. MR. JUSTICE WHITE, in an opinion joined by MR. JUSTICE STEWART, viewed the plan as one enacted by the City Council, emphasizing that in his view the Council was exercising its lawful powers in so acting. 437 U. S., at 546–547. MR. JUSTICE MARSHALL, in a dissent joined by MR. JUSTICE BRENNAN and MR. JUSTICE STEVENS, agreed that the power of the legislative body under state law to enact the plan at issue is an important factor, but disagreed about the powers possessed by the City Council in that case. He concluded that the Council could only have acted pursuant to a court order and that the case was therefore controlled by *East Carroll, supra,* at 638, n. 6, where we labeled a plan "judicial" partly because

the legislative body had no authority to reapportion itself. 437 U. S., at 550–554. My opinion concurring in part and concurring in the judgment, joined by the three remaining Justices, asserted that assumptions about state law were "unnecessary" because the "essential point is that the Dallas City Council exercised a legislative judgment, reflecting the policy choices of the elected representatives of the people, rather than the remedial directive of a federal court." *Id.,* at 548.

Arguably, it was this last approach that the Court of Appeals followed in the present case. It determined that the plan was a legislative one because it was approved for submission by the Commissioners of Kleberg County. The Court of Appeals was apparently unconcerned that the reapportionment might be outside the Commissioners' legislative powers.[1] If so, it can be contended that the court was following an approach that has been endorsed by only a minority of Justices. Applicants also make a substantial argument that this approach is inconsistent with the decision in *East Carroll,* as that case has been interpreted by the majority of this Court.[2]

---

[1] Under Tex. Rev. Civ. Stat. Ann., Art. 2.04 (1) (Vernon Supp. 1979), the Commissioners can only enact a reapportionment plan during their July or August terms. See *Wilson* v. *Weller,* 214 S. W. 2d 473 (Tex. Civ. App. 1948). The plan in this case was submitted in November. Respondents contend, however, that the Commissioners have an "inherent" power to reapportion their precincts when a "vacuum" has been created by a court ruling that the existing precincts are drawn unconstitutionally.

[2] Indeed, this apparent inconsistency may have produced a conflict within the Fifth Circuit on the issues raised here. In *Marshall* v. *Edwards,* 582 F. 2d 927 (1978) (en banc), cert. denied, 442 U. S. 909 (1979), a case involving the same litigation as *East Carroll* but an entirely different plan, the Fifth Circuit labeled that plan "court-ordered" partly because the legislative body merely submitted it, rather than adopting it. 582 F. 2d, at 933–934. Applicants contend that the Commissioners acted in a similarly limited fashion here.

## III

It is fair to say that the opinions in *East Carroll* and *Wise* v. *Lipscomb* fall considerably short of providing clear guidance to the courts that initially address this difficult issue. It would be helpful, therefore, for this Court to exercise its responsibility to provide such guidance. It seems to me that this case presents the opportunity.

I mention briefly the settled principles that govern the granting of stays. *Times-Picayune Publishing Corp.* v. *Schulingkamp,* 419 U. S. 1301, 1305 (1974) (POWELL, J., in chambers); *Graves* v. *Barnes,* 405 U. S. 1201, 1203–1204 (1972) (POWELL, J., in chambers). In view of the ambiguity of our precedents (to which I may have contributed), I cannot say whether the possibility of reversal is significant. I do think there is a "reasonable probability" that four Members of the Court will consider the issue sufficiently meritorious—and the need for clarification sufficiently evident—to warrant a grant of certiorari. The applicants assert that, absent a stay, they will be required immediately to expend substantial money on preclearance procedures, and that this expenditure will be irretrievable. They argue further that without a stay their petition to this Court will become moot. The balance as to the possibility of "irreparable harm" seems to favor the applicants.

I will therefore enter an order recalling the mandate and staying the judgment of the United States Court of Appeals for the Fifth Circuit pending disposition of the petition for certiorari.