640 F.2d 777
 Rev. Roy JONES et al., Plaintiffs-Appellants,
Rose Wilson, individually and as representative of the Black
and Mexican- American Voters of Lubbock, Texas,
Plaintiff-Intervenor-Appellant,
v.
The CITY OF LUBBOCK et al., Defendants-Appellees.
 No. 79-2744.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 March 25, 1981.
 Appeal from the United States District Court for the Northern District of Texas; Halbert O. Woodward, Chief Judge.
 William L. Garrett, Dallas, Tex., Daniel H. Benson, School of Law, Lubbock, Tex., Robert P. Davidow, George Mason Univ., School of Law, Arlington, Va., Albert Perez, Mark C. Hall, Lane Arthur, Lubbock, Tex., for plaintiffs-appellants.
 James P. Brewster, Trial Atty., Dennis W. McGill, Travis D. Shelton, Lubbock, Tex., for defendants-appellees.
 Before GOLDBERG, POLITZ and SAM D. JOHNSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 We remand this case for reconsideration in light of the Supreme Court's recent opinion in City of Mobile v. Bolden, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980). The parties should be allowed, if they so desire, to present additional evidence on remand.
 
 
 2
 REVERSED AND REMANDED.
 
 GOLDBERG, Circuit Judge, specially concurring:
 
 3
 Black and Mexican American citizens of Lubbock, Texas, instituted this action seeking a fair and prompt judicial response to an important and straightforward question: does the at-large electoral process for the selection of city councilmen in Lubbock violate the Fourteenth or Fifteenth Amendments to the United States Constitution? The district judge applied the then-existing Fifth Circuit law controlling the area a jurisprudence produced by ten years of struggle and compromise between judges of varying political and jurisprudential backgrounds. Equally important, the district judge in applying the precepts set forth by this court sitting en banc in Zimmer v. McKeithen, 485 F.2d 1297 (5th Cir. 1973) (en banc), aff'd on other grounds sub nom.; East Carrol Parish Board v. Marshall, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976), relied on legal principles whose merit had been tested and affirmed by the trial of reality and experience. However, since the issuance of the lower court's opinion in this case, a majority of justices of the United States Supreme Court in City of Mobile v. Bolden, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980) have rejected the Zimmer test,[1] simultaneously casting aside the ten years of thought, experience and struggle embodied within it. At this point, mine is not to make reply, mine is not to reason why.[2] We are constrained to follow the Supreme Court's decision in Bolden and to require the district courts to do the same.
 
 
 4
 Since the Supreme Court has completely changed the mode of assessing the legality of electoral schemes alleged to discriminate against a class of citizens, we must remand this case to the district court to reexamine the evidence, and its findings, in whatever light is radiated by Bolden. In addition, due process and precedent mandate that when the rules of the game are changed, the players must be afforded a full and fair opportunity to play by the new regulations. Therefore, the litigants in this action must be allowed, if they so desire, to present further evidence on remand to establish their claims under the law announced in Bolden. See Kirksey v. City of Jackson, 625 F.2d 21 (5th Cir. 1980).
 
 
 5
 Recognizing the inevitability of a remand, both parties requested at oral argument that this panel provide guidance as to the meaning of Bolden in order to assist the district courts in this and similar future cases. The response to this request must, of necessity, be cursory and wholly inadequate. As Justice White surmised in his concurring opinion[3] in Bolden, the Supreme Court's decision "leaves the courts below adrift on uncharted seas with respect to how to proceed on remand." The Supreme Court is not a unified body; it is a bench shared by nine individuals. The words of minority groups of justices are the words of men; however, the shared expression of a majority of justices constitutes the highest law of our country. Therefore, although much was written by the justices in Bolden, little save for the rejection of the Zimmer test was actually decided therein. There was no majority opinion on the proper test to be employed in assessing the legality of an electoral system alleged to discriminate against minority citizens.[4] Moreover, I am not sufficiently clairvoyant to discern the complete body of law which will evolve from future trials and appeals to fill the void left by the Supreme Court's simultaneous rejection of Zimmer and its failure to construct a successor. We therefore reluctantly leave it to the district court to embark on the task of providing shape to the amoebic holdings of Bolden by applying that case to the present facts.
 
 
 6
 However, in an effort to provide some guidance to the Court below, note should be taken as to what was not decided by the Supreme Court in Bolden. The Court seems not to have repudiated its earlier decision in White v. Regester, 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); therefore, there was no clear holding on the need to prove discriminatory intent in order to establish a violation of the Constitution.[5] Similarly, there was no holding as to whether purposeful discrimination can be inferred from the "totality of the circumstances" or from the fact that an electoral process, which operated in a discriminatory manner, was maintained despite an awareness of its discriminatory effects. See Nevett v. Sides, 571 F.2d 209, 231 (5th Cir. 1978) (Wisdom, J. concurring).[6] It is clear that these questions divided the Supreme Court producing the indecisive opinion and amorphous holding in Bolden; it is equally clear that their resolution will have to be the product of a long rebuilding process.
 
 
 7
 Justice Jackson once commented on the Supreme Court that "We are not final because we are infallible, we are infallible because we are final."[7] Clearly this reference to the Supreme Court as "final" was made from a very narrow perspective. The American decisional process cannot be understood as a finite straight line, with a trial beginning, an appellate middle and a Supreme end. Rather, the litigational paradigm is circular, with the Supreme Court's final words from yesterday's case serving as the starting phrase for tomorrow's opinion. Thus, the task falls on the appellate and trial courts to continually interpret and apply the mandates of the Supreme Court. Without guidance from above, the lower courts are sentenced to a term of confusion.
 
 POLITZ, Circuit Judge, specially concurring:
 
 8
 I concur, without reservation, in the result reached and the legal basis for that result as set forth by Judge Goldberg in his concurring opinion, and share his concern about the limited precedential guidance provided by the Supreme Court's decision in City of Mobile v. Bolden, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980). I write in special concurrence because I do not quite share my colleague's distress that the burden of applying the Bolden expressions, precedential and otherwise, now falls onto the shoulders of the district courts and courts of appeals. I am satisfied that the trial and intermediate appellate courts can and will reach decisions, tailoring remedies when needed, consistent with Bolden, other controlling precedents and the Constitution. More specific guidance by precedential expressions would have been most welcome. But the difficulties the justices faced in attempting to reach a consensus is apparent in their six separate writings in Bolden. The lower courts shall now set about the task of addressing and resolving those difficulties on a case-by-case basis.
 
 
 
 [1]
 At least five justices, the Chief Justice and Justices Stevens, Stewart, Powell and Rehnquist expressly rejected the use of the Zimmer test
 
 
 [2]
 The plight, therefore, much parallels that experienced by Tennyson's Light Brigade:
 "Forward the Light Brigade!"
 Was there a man dismay'd?
 Theirs not to make reply,
 Theirs not to reason why,
 Theirs but to do and die.
 
 
 [3]
 446 U.S. at 103, 100 S.Ct. at 1519, (Stevens, J., concurring)
 
 
 [4]
 The plurality opinion of Justice Stewart, joined in by the Chief Justice and Justices Powell and Rehnquist held that discriminatory intent must be shown. 446 U.S. at 72-74, 100 S.Ct. at 1503. The dissenting opinions of Justices Marshall and Brennan argued that proof of discriminatory impact is sufficient to establish a constitutional violation in election cases. 446 U.S. at 94, 100 S.Ct. at 1520. The remaining opinions of Justices Stevens, Blackmun and White did not address the question whether discriminatory intent must be shown as a prerequisite to finding a constitutional violation. 446 U.S. at 80, 89, 94, 100 S.Ct. at 1507, 1512, 1514
 
 
 [5]
 See note 4, supra
 
 
 [6]
 Although a plurality of the Court noted that the "subjective intent to discriminate standard," see Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), was applicable to at-large election cases, there seems to be several pitfalls to applying the "subjective intent" test in this context. First, the "subjective intent" standard, as elaborated in the two Supreme Court opinions, does not seem suited to deal with allegations of discrimination in the maintenance of an electoral system through the inaction of those in control, rather than in the actual formation of a given electoral scheme. For example, the electoral process in Lubbock, Texas was instituted in 1909 at a time when virtually no black citizens lived in that city. However, this system innocently instituted in 1909 may be preserved in 1981 due to its effectiveness in diluting the votes of minority residents, who now constitute about twenty-five percent of Lubbock's population. Second, unlike the personnel test at issue in Washington v. Davis or the zoning plan challenged in Arlington Heights, an electoral system may have been instituted or redesigned many years ago. Therefore, even if the formulation and institution of a given plan were being challenged (as opposed to its maintenance), it would be impossible to conduct the postmortem psychoanalysis of all of the legislators or councilmen responsible for the institution of the plan in order to meet the "subjective intent" standard of proof
 
 
 [7]
 Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 427, 97 L.Ed. 469 (1953) (Jackson, J. concurring)