Henry J. KIRKSEY, et al.,
Plaintiffs-Appellants,

v.

CITY OF JACKSON, MISSISSIPPI, et
al., Defendants-Appellees.

No. 81–4058.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Dec. 11, 1981.

Opinion on Denial of Rehearing and Rehearing En Banc March 5, 1982.
See 669 F.2d 316.

See also, 552 F.2d 156.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Frank R. Parker, Barbara Y. Phillips, Washington, D.C., for plaintiffs-appellants.

Irving L. Gornstein, U. S. Dept. of Justice, Washington, D.C., for amicus curiae.

Howard C. Ross, Jr., City Atty., Thomas G. Lilly, Joseph P. Wise, Richard D. Gamblin, Jackson, Miss., for defendants-appellees.

Before MARKEY **, Chief Judge, and GEE and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

We again address a class action challenge to the at-large voting procedure utilized by the City of Jackson, Mississippi, for the election of its mayor and two city commissioners. Plaintiffs contend that the city's electoral processes violate the thirteenth, fourteenth, and fifteenth amendments to the Constitution and abrogate rights secured by 42 U.S.C. §§ 1971, 1973 and 1983, by impermissibly diluting black voting strength. Plaintiffs allege that the at-large voting system was enacted and maintained, in part, to lessen the likelihood of the election of blacks to municipal office. After a bench trial, the district court concluded that the evidence did not establish discriminatory intent in either the institution or maintenance of Jackson's commission form of government. 461 F.Supp. 1282 (S.D.Miss. 1978). On appeal, we vacated the district court's judgment and remanded for reconsideration in light of the intervening decision by the Supreme Court in *City of Mobile v. Bolden,* 446 U.S. 55, 100 S.Ct. 1519, 64 L.Ed.2d 47 (1980). 625 F.2d 21 (5th Cir. 1980). On remand, following a supplemental hearing in which detailed evidence was presented by the parties, the district court rejected plaintiffs' demands. 506 F.Supp. 491 (S.D.Miss.1981). We affirm.

### Facts

The factual circumstances and extensive procedural history of this litigation are set forth in careful detail in the district court's opinion. 506 F.Supp. at 493–98. We highlight the principal material facts as a predicate for our discussion.

In 1908 the Mississippi Legislature authorized Mississippi municipalities to institute at-large voting plans for local elections. In a 1912 referendum, the electorate of Jackson adopted a mayor-commission form of government with a mayor and two commissioners elected at-large. Since then, Jackson has operated under this governmental structure. No black thereafter held elected city office in Jackson, although the 1970 census reported that blacks constitute 40% of the city's population.

On February 22, 1977, a referendum was conducted in Jackson in which its citizens were asked to decide whether the mayor-commission should be discarded in favor of a mayor-council. Under the latter governmental design, the mayor would be elected at-large from the city and nine council members would be elected from nine single-member districts. In the pre-referendum campaign, the mayor-council form was endorsed and widely supported by local office holders and by both white and black leaders throughout the Jackson community. In an election notably marked by electoral apathy, the voters rejected the proposed change in the form of government by a vote of 14,935 to 11,497. This suit followed.

On appeal, appellants contend that the trial judge erred: (1) in excluding expert testimony regarding racial motivation; (2) in concluding that judicial inquiry into the motives of the electorate, in exercising the franchise, is improper; and (3) in concluding that neither the 1912 nor 1977 elections violated the Constitution or the 1965 Voting Rights Act. Our consideration of these issues involves a certain amount of overlapping discussion.

### 1. *Judicial examination of a voter's motivation*

From the earliest times in the unfolding of what has come to be our Constitution and Bill of Rights, free expression has been viewed as one of the most precious rights, essential to the flowering and growth of a democratic society. *See, e. g., First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); *Collin v. Smith,* 578 F.2d 1197 (7th Cir.), *cert. denied,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978). The first amendment guarantees the uninhibited exchange of ideas and permits of the regulation of the content of speech only when it advo-

** Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

cates or incites imminent lawless action, posing a clear and present danger. *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Even the muting of universally offensive comments is not permitted. *See, e. g., Hess v. Indiana,* 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973); *Bond v. Floyd,* 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Dennis v. United States,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

██ At the core of first amendment values is the right to espouse political views and associate for political purposes. *See, e. g., United Jewish Org. v. Carey,* 430 U.S. 144, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977); *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Hadley v. Junior College Dist.,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). *See also American Communications Ass'n v. Douds,* 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950). Inherent in this guarantee is the sanctity of the ballot. The district court was of the opinion that an inquiry "into the motives of voters may very well constitute an unwarranted and unconstitutional undermining of one of the most fundamental rights of the citizens under our constitutional form of government...." 506 F.Supp. at 499 (*citing Southern Alameda Spanish Speaking Organization v. City of Union City, Colo.,* 424 F.2d 291 (9th Cir. 1970)). We agree.

██ The first amendment assures every citizen the right to "cast his vote for whatever reason he pleases...." *Anderson v. Martin,* 375 U.S. 399, 402, 84 S.Ct. 454, 455, 11 L.Ed.2d 430 (1964). Baser motives are protected along with the grand and noble. Stigmatized racial attitudes, neither socially admirable nor civically attuned, are not constitutionally proscribed. Our recent decision in *McMillan v. Escambia County,* 638 F.2d 1239 (5th Cir. 1981), while holding unconstitutional the methods for electing school board and city council members which had the avowed discrimina-

tory purpose of minimizing black voter strength, did not address the motives of the individual voters. In *Escambia County* the constitutionally offensive conduct was the exercise of the legislative power in structuring the governmental systems. The motivation for that conduct is subject to examination. In the instant case, the Mississippi Legislature enacted legislation permitting the electorate of Jackson to determine, by referendum, their form of city government. No basis exists for suggesting an impermissible motive in the structuring of the city system. That decision was deferred to the electorate of Jackson. The motivation(s) of the individual voters may not be subjected to the searching judicial inquiry the plaintiffs wish performed.

We agree with the district court that the voters in the 1912 and 1977 referendums were free to vote however they saw fit, for whatever reasons they wished. Yet, even should we conclude otherwise, we agree with the district court that the record in this case does not demonstrate racially discriminatory purpose either in the establishment or in the maintaining of Jackson's mayor-commission form of government.

### 2. *Exclusion of expert testimony*

██ Shortly before the hearing on remand commenced, defendants moved to exclude the testimony of three witnesses. Concluding that to allow two of the three witnesses to testify would be inconsistent with the Federal Rules of Civil Procedure, as well as the specific rules of the case set by the court after consultation with the parties, the trial judge partially granted the motion. *See* 506 F.Supp. at 496–97. In view of the circumstances underlying the ruling, we find no abuse of discretion in the order. *See Hastings v. North East Ind. School Dist.,* 615 F.2d 628 (5th Cir. 1980); *Shelak v. White Motor Co.,* 581 F.2d 1155 (5th Cir. 1978).

### 3. *Establishment and maintenance of at-large voting*

As noted earlier, since establishment of the at-large voting system in 1912, no black

has been elected to city office, notwithstanding the fact that over one-third of Jackson's eligible voters are black. The 1980 census reflects that minorities comprise 46.8% of Jackson's population. Plaintiffs argue that racially polarized voting, in the at-large election milieu, unconstitutionally dilutes their votes. They contend that the at-large method institutionally denies blacks, a significant minority of the total population, a realistic opportunity to elect blacks to local office. Similar contentions have been recently considered. *See City of Mobile v. Bolden*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980), *rev'g*, 571 F.2d 238 (5th Cir. 1978); *East Carroll Parish School Bd. v. Marshall*, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed. 296 (1976), *aff'g, Zimmer v. McKeithen*, 485 F.2d 1297 (5th Cir. 1973); *Lodge v. Buxton*, 639 F.2d 1358 (5th Cir. 1981); *McMillan v. Escambia County*, 638 F.2d 1239 (5th Cir. 1981); *Cross v. Baxter*, 604 F.2d 875 (5th Cir. 1979); *Nevett v. Sides*, 571 F.2d 209 (5th Cir. 1978); *Blacks United for Lasting Leadership v. Shreveport*, 571 F.2d 248 (5th Cir. 1978). Our path has been blazed; we do not write on a clean slate.

■ While it has been suggested that the *Bolden* plurality opinion is ambiguous, *United States v. Uvalde Consol. Ind. School Dist.*, 625 F.2d 547 (5th Cir. 1980), it is certain that, in order for plaintiffs to prevail, proof of purposeful · discrimination must be marshalled under either the fourteenth or fifteenth amendment. 446 U.S. at 66–67, 100 S.Ct. at 1499–1500. *See, e. g., City of Memphis v. Green*, 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981); *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). *See also Wright v. Rockefeller*, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512 (1964). The burden of proof is on the plaintiffs.

Plaintiffs contend that the 1912 referendum was infirm because race was a significant motivating factor in the enactment of enabling legislation by the Mississippi Legislature and in the presentation of the issue to the electorate. Plaintiffs maintain that despite the fact that blacks were almost completely disenfranchised at that time by provisions of the Mississippi Constitution of 1890 and the rule of "white primaries" race was an all-pervasive consideration in every important political decision. Plaintiffs tendered the opinions of experts who offered historical analyses portraying the 1912 referendum as an effort to further disenfranchise blacks.

■ The district court found this evidence inconclusive for two reasons. Because of their limited access to the polls, blacks were not affected meaningfully by the at-large voting design. Further, the switch to at-large election of mayor-commissioners was viewed by the district court as "part of the progressive reform movement throughout the United States at a time when countless other municipalities and other local governmental units ... adopted the same basic electoral system of at-large voting." 506 F.Supp. at 501. The record amply supports this finding. Viewing the evidence in light of the various evidentiary· sources [1] suggested by the Supreme Court in *Arlington Heights*, we conclude that the district court correctly found that invidious discriminatory purpose was not a motivating factor in the 1912 referendum.

As we recently noted:

The general election laws in many jurisdictions were originally adopted at a time when Blacks had not received their franchise. No one disputes that such

---

1. We recently summarized the list of possible evidentiary showings of discriminatory motivation as follows:

(1) the historical background of the action, particularly if a series of actions have been taken for invidious purposes; (2) the specific sequence of events leading up to the challenged action; (3) any procedural departures from the normal procedural sequence; (4) any substantive departures from normal procedure ...; and (5) the legislative history, especially where contemporary statements by members of the decision-making body exist.

*McMillan v. Escambia County*, 638 F.2d at 1243.

laws were not adopted to achieve an end, the exclusion of Black voting, that was the status quo. Other states' election laws, though adopted shortly after the enactment of the Fifteenth Amendment, are so old that whatever evidence of discriminatory intent may have existed, has long since disappeared.... The focus then becomes the existence of a discriminatory purpose for the *maintenance* of such a system.

*Lodge v. Buxton,* 639 F.2d at 1363 n.7 (emphasis in original). Finding no discriminatory intent in the establishment of the at-large system, we direct our attention to inquiring whether the at-large municipal voting formula was retained, and reaffirmed in the 1977 referendum, for racially discriminatory purposes.

 The district court found that the plaintiffs failed to prove adequately purposeful racially discriminatory intent in Jackson's retention and maintenance of the municipal form of government. We agree. The evidence does not establish that the city officials in Jackson maintained the at-large voting and the mayor-commission plan of government in order to exclude blacks from office. Nor was the 1977 referendum called with a discriminatory purpose in mind. The plaintiffs actively supported the 1976 legislation which made the 1977 referendum possible. The plaintiffs actively supported the referendum itself, urging the mayor-council option. The mayor of Jackson at the time of the 1977 referendum actively supported its passage, as did other leaders of the governmental, business, and civic segments of the community. The record is devoid of any proof linking a racial reason to the opposition of any person acting on behalf of the state.

The fact that black candidates have been defeated in election races in Jackson does not necessarily signal a constitutional infraction. *City of Mobile v. Bolden,* 446 U.S. at 66, 100 S.Ct. at 1499 (to prove discriminatory purpose "it is not enough to show that the group allegedly discriminated against has not elected representatives in proportion to its numbers"); *White v. Register,*

412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); *Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971). The goal of the fourteenth and fifteenth amendments "is to assure 'effective black minority participation in democracy.'" *United States v. Board of Supervisors of Forrest County,* 571 F.2d 951, 955 (5th Cir. 1978) (*quoting Kirksey v. Board of Supervisors of Hinds County,* 554 F.2d 139, 151 (5th Cir.), *cert. denied,* 434 U.S. 968, 98 S.Ct. 512, 54 L.Ed.2d 454 (1977)). However, the political reality is that "in a democracy the minority loses at the ballot box. In recognition of the inevitability of such a result, this court has concentrated upon access to the political process rather than assurance of a particular result." 571 F.2d at 955. The finding and conclusion of the district court, that the result of the 1977 referendum was not the product of governmental racial motivation, is supported by the record. The finding is not clearly erroneous and is affirmed.

**4. *Burden of proof under the Voting Rights Act***

██ As a final assignment of error, plaintiffs assert that, even if not racially motivated, at-large voting in Jackson denies their rights secured under section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, and 42 U.S.C. § 1971. Section 2 of the Voting Rights Act, as amended in 1975, states:

No voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote on account of race or color....

The plaintiffs argue that Congress legitimately legislated beyond the specific prohibitions of the fourteenth and fifteenth amendments to enjoin practices which perpetuate the effects of past discrimination.

The trial court determined that no proof of any 42 U.S.C. § 1971 violation had been produced and that *Bolden* indicates the proper view of section 2 of the Voting Rights Act is coterminous with the fif-

teenth amendment. We concur; "it is apparent that the language of § 2 no more than elaborates upon that of the fifteenth amendment, and the sparse legislative history of § 2 makes clear that it was intended to have an effect no different from that of the fifteenth amendment itself." *City of Mobile v. Bolden*, 446 U.S. at 60–61, 100 S.Ct. at 1496–1497. *See United States v. Uvalde Consol. Ind. School Dist.*, 625 F.2d 547 (5th Cir. 1980).

· We concur in all respects in the thorough, insightful determinations of the trial court, and AFFIRM its judgment.