**Merlis J. BROUSSARD & Ernest Johnson, Plaintiffs-Appellees,**

v.

**Challin Octave PEREZ, et al., Defendants-Appellants.**

**No. 78–3594.**

United States Court of Appeals, Fifth Circuit.*

Sept. 24, 1982.

Rehearing and Rehearing En Banc Denied Oct. 26, 1982.

R. Gordon Kean, Jr., Baton Rouge, La., Sidney W. Provensal, Jr., New Orleans, La., for defendants-appellants.

Stanley A. Halpin, Jr., New Orleans, La., for plaintiffs-appellees.

Before REAVLEY, RANDALL and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

This suit attacks the at-large election of the five Plaquemines Parish Commission Council members on the ground that this manner of election unconstitutionally dilutes the votes of black citizens. The district court held in favor of the plaintiffs, declaring the at-large method of election to be maintained with the intent to deprive blacks of equal protection of the law. The district court's findings are supported by the record and its decision is in accord with the correct standard in application of the Fourteenth Amendment as declared by the Supreme Court in *Rogers v. Lodge*, —— U.S. ——, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982). We therefore affirm.

Plaquemines Parish adopted its present commission council form of government in 1961 under provision of an amendment to the Louisiana Constitution adopted the previous year. Unquestionably, the motivation of the Parish and its leadership in the original adoption of the electoral scheme was unrelated to its effect upon the participation in parish government by black citizens. There remain strong reasons for at-large election of council members, because that method promotes parish-wide considerations. This is what would seem to best serve the parish in the best of worlds. We do not have the best world there, however, because of racial discrimination—deep seated and still lingering. With the finding that the method of election is maintained for a discriminatory purpose, we must compensate for the lack of a united community by changing that method in order to comply with the requirements of the Fourteenth Amendment.

The district court addressed the specific factors of discriminatory impact identified in *Zimmer v. McKeithen*, 485 F.2d 1297 (5th Cir. 1973), aff'd sub nom. *East Carroll Parish School Board v. Marshall*, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976). The following findings were made:

1. "[B]lacks access to the political process is somewhat impaired under the present governmental scheme." Although blacks are allowed to register and vote, and to join the political party of their choice, the dominant Democratic Party "has consistently slated whites for parish government elected positions and has in effect operated to screen blacks out of effective participation in those elections." Only one black has run for office in the parish in this century, and he was badly defeated.

2. The "parish government is not as responsive to minority needs as it could or should be." Hurricane evacuees in 1969 and 1975 were sheltered and interviewed in segregated relief facilities. Discrimination has existed in the administration of the parish's bookmobile program, the provision of public transportation to private segregated swimming pools, parish support of a segregated youth recreation program, and in segregated waiting rooms in health facilities.

3. The original establishment of the at-large scheme was part of a change in government "aimed chiefly at achieving a more responsive and efficient parish government rather than at diluting black votes," but the system is *maintained* for "an invidious purpose."

4. There has been a history of racial discrimination in Plaquemines Parish, and this past discrimination has a continuing effect to inhibit participation in parish political affairs.

5. The at-large system "operates invidiously to cancel out and minimize the voting strength of Plaquemines Parish's black minority and denies them equal access to the political process." Whites compose a substantial majority of the population and registered voters of the parish. Louisiana Law requires a runoff and election only by majority vote.

6. "Plaintiffs have clearly proven both the existence of dilution and the presence of racially discriminatory purpose in the extant Plaquemines Parish governmental structure."

The district court gave full effect to this court's decision in *Nevett v. Sides*, 571 F.2d 209 (5th Cir. 1978) and to our understanding of the impact of *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). We held in *Nevett* that "a showing of racially motivated discrimination is a necessary element in an equal protection voting dilution claim . . . ." 571 F.2d at 219. In the case on appeal Judge Heebe clearly considered the *Zimmer* factors to the extent they were relevant to the discriminatory intent. The *Zimmer* factors were not treated as the ultimate finding; discriminatory purpose was the independent and final issue of fact. Judge Heebe accurately foresaw the Supreme Court's writing in *Rogers v. Lodge, supra*. Since the findings before us are not clearly erroneous, we follow *Rogers* and affirm, remanding to the district court to pattern the remedy.

AFFIRMED.