Londell WILLIAMS; James Louis; Joyce Grissom; Mattie Roberson, Plaintiffs–Appellees,

v.

CITY OF TEXARKANA, ARKANSAS, A Public Body Corporate; Bobby Ferguson, Mayor of the City of Texarkana, Arkansas; Bobby Ferguson, Individually and in his official capacity as a member of the Texarkana, Arkansas Board of Directors; Danny Gray, Individually and in his official capacity as member of the Texarkana, Arkansas Board of Directors; Hubert Easley, Individually and in his official capacity as member of the Texarkana, Arkansas Board of Directors; Jim Nicholas, Individually and in his official capacity as member of the Texarkana, Arkansas Board of Directors; Nelson Shaw, Individually and in his official capacity as a member of the Texarkana, Arkansas Board of Directors; Greg Giles, Individually and in his official capacity as a member of the Texarkana, Arkansas Board of Directors, Defendants–Appellants,

Miller County, Arkansas Election Commission; David Orr, In his official capacity as member of the Miller County, Arkansas Election Commission; Lou Ann Dean, In her official capacity as member of the Miller County, Arkansas Election Commission; Margaret McRaney, In her official capacity as member of the Miller County, Arkansas Election Commission, Defendants–Appellees.

Londell WILLIAMS; James Lewis; Joyce Grissom; Mattie Roberson, Plaintiffs–Appellees,

v.

CITY OF TEXARKANA, ARKANSAS, a Public Body Corporate; Bobby Ferguson, Mayor of the City of Texarkana, Arkansas; Bobby Ferguson, Individually and in his capacity as member of the Texarkana, Arkansas Board of Directors; Danny Gray, Individually and in his official capacity as member of the Texarkana, Arkansas Board of Di-

rectors; Hubert Easley, Individually and in his official capacity as member of the Texarkana, Arkansas Board of Directors; Jim Nicholas, Individually and in his official capacity as member of the Texarkana, Arkansas Board of Directors; Nelson Shaw, Individually and in his official capacity as a member of the Texarkana, Arkansas Board of Directors; Greg Giles, Individually and in his official capacity as a member of the Texarkana Arkansas Board of Directors, Defendants–Appellants,

v.

The MILLER COUNTY, ARKANSAS ELECTION COMMISSION; David Orr, In his official capacity as member of the Miller County, Arkansas Election Commission; Lou Ann Dean, in her official capacity as member of the Miller County, Arkansas Election Commission; Margaret McRaney, In her official capacity as member of the Miller County, Arkansas Election Commission, Defendants–Appellees.

Nos. 92–3475, 93–1713.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1993.

Decided Aug. 12, 1994.

Perlesta Hollingsworth, Little Rock, AR, argued (Paul L. Dickerson, Texarkana, AR, on the brief), for appellants.

Mark Burnette, Little Rock, AR, argued, for Roberson.

Carlton Jones, Texarkana, AR, argued, for McRaney.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and KOPF,* District Judge.

WOLLMAN, Circuit Judge.

The City of Texarkana, Arkansas, appeals from the district court's [1] judgment ordering implementation of a remedial plan entered following the district court's ruling that the scheme for electing members of Texarkana's governing body violated section two of the Voting Rights Act (the Act), 42 U.S.C. § 1973. We affirm.

---

* The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

## I.

Four black registered voters of Texarkana commenced this action, alleging that the 4–3 scheme for electing the seven members of the Board of Directors, Texarkana's governing body, dilutes the voting strength of blacks and denies them the opportunity to elect the representatives of their choice. Under the 4–3 plan, four directors are elected from single-member districts, and three directors are elected at large. *See* Ark.Code Ann. § 14–61–107 (listing alternative methods of selecting directors).

The district court found that the 4–3 plan violated section two of the Act and ordered that "the defendant City of Texarkana, the defendant members of the present City Board of that City and plaintiffs ... submit ... proposed plans for structuring the City of Texarkana's manager form of government and the election of the board members thereof." Dist.Ct. Order, No. 92–4001, at 26 (W.D.Ark. Sept. 29, 1992). In response to the court's order, the plaintiffs proposed a plan with seven single-member districts. The individual defendants proposed a plan with six single-member districts and an at-large mayoral position. After considering two proposed plans, the district court ordered that a 7–0 plan be implemented to remedy the section two violation.

The City appealed the district court's finding of liability (No. 92–3475), arguing that the 4–3 plan does not violate section two and, alternatively, that the district court should have imposed liability on the Miller County Election Commission. The City also appealed the district court's remedial order (No. 93–1713), arguing that the court should have adopted a 6–1 plan.

## II.

■ Section two of the Act prohibits any state or political subdivision from using any "voting qualification or prerequisite to voting or standard, practice, or procedure ... which results in a denial or abridgement of the right of any citizen ... to vote on account of race or color." 42 U.S.C. § 1973(a). To establish a violation of section two, the plaintiffs must show, based on the totality of the circumstances, that "members [of a protected class] have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* § 1973(b); *see also Thornburg v. Gingles,* 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). During the trial, as well as in its brief on appeal, the City of Texarkana argued that the plaintiffs had not established a section two violation. During oral argument, however, the City conceded that the 4–3 plan violated section two. We therefore do not consider the arguments that the City raised in its brief challenging the district court's finding of a section two violation.

Although the City concedes that the 4–3 plan violates section two, it contends that the Miller County Election Commission and not the City is responsible for the violation. The Election Commission is a defendant in this action because in addition to challenging the at-large election of three directors, the plaintiffs alleged that the black voters were "packed" into one single-member district. The Election Commission is the entity responsible for "divid[ing] the territory of the city into the number of wards ... equal to the number of members of the governing board to be elected from wards." Ark.Code Ann. § 14–61–109. The district court found, however, that the plaintiffs had not proved that black voters were packed into one single-member district and therefore properly concluded that the plaintiffs' claim against the Election Commission had no merit.

■ As stated above, the district court found, and the City has now conceded, that the at-large election of three directors violates section two of the Act. Under Arkansas law, at-large director positions can be eliminated only if the electorate votes to change the manner of selecting members of the Board of Directors. Ark.Code Ann. §§ 14–61–113, –114. The City contends that because a change in its form of government cannot be effectuated without approval of the electorate, it should not be held liable for the voting rights violation. That Arkansas law does not grant the City authority to choose among the alternative forms of city-manager government provided by Arkansas law does

not persuade us that the district court's order should be reversed. Were we to accept the City's argument, we would have to conclude that although the 4–3 scheme dilutes the minority's voting strength, the plaintiffs are without a remedy, for all electoral schemes which pursuant to state or local law cannot be altered without approval of the electorate would essentially be excluded from the protection of the Act. Congress could not have intended that schemes which dilute the minority's voting strength, yet cannot be changed without approval of a majority of the voters, should be beyond the reach of judicial intervention and remediation.

■ The City contends that the district court erred by adopting the 7–0 plan, arguing that the 6–1 plan is a legislative plan to which the district court should have deferred.

■ Federal courts are reluctant to devise and impose redistricting and reapportionment plans, because such tasks are traditionally performed by legislative bodies. *Chapman v. Meier,* 420 U.S. 1, 27, 95 S.Ct. 751, 766, 42 L.Ed.2d 766 (1975). "When a federal court declares an existing apportionment scheme unconstitutional, it is therefore appropriate, whenever practicable, to afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect its own plan." *Wise v. Lipscomb,* 437 U.S. 535, 540, 98 S.Ct. 2493, 2497, 57 L.Ed.2d 411 (1978). If an appropriate legislative body offers a remedial plan, the court must defer to the proposed plan unless the plan does not completely remedy the violation or the proposed plan itself constitutes a section two violation. *Hines v. Mayor & Town Council of Ahoskie,* 998 F.2d 1266, 1271 (4th Cir. 1993); *Dickinson v. Indiana State Election Bd.,* 933 F.2d 497, 501 (7th Cir.1991). If, on the other hand, an appropriate legislative body does not propose a remedy, the district court must fashion a remedial plan. *Wise,* 437 U.S. at 540, 98 S.Ct. at 2497.

The City's argument that the district court erred by adopting a 7–0 plan rather than a 6–1 plan fails, for the 6–1 plan is not a legislative plan. The Texarkana Board of Directors did not submit the plan; six individual defendants submitted the plan. Although the individual defendants were members of the Board of Directors, they did not submit the plan on behalf of the City. Rather, they submitted the plan in their individual capacities. After examining the record, we find no evidence of a resolution or other action by the Board of Directors officially endorsing or recommending the 6–1 plan. *Cf. Garza v. County of Los Angeles,* 918 F.2d 763, 776 (9th Cir.1990), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). Accordingly, because neither of the proposed plans was a legislative plan, we find no error in the district court's decision to adopt the 7–0 plan. *See East Carroll Parish Sch. Bd. v. Marshall,* 424 U.S. 636, 639, 96 S.Ct. 1083, 1085, 47 L.Ed.2d 296 (1976) (when district court fashions reapportionment plans, single-member districts are preferred).

### III.

■ After the district court ordered election of new directors under the 7–0 plan, certain Texarkana voters filed a petition to change the form of government to a 6–1 plan. *See* Ark.Code.Ann. § 14–61–113. On November 2, 1993, the Texarkana electorate voted to adopt a 6–1 plan. On the same day, the voters also elected seven new directors under the 7–0 plan ordered by the district court.[2]

The plaintiffs urge that we prohibit implementation of the 6–1 plan approved at the November 1993 election because the district court did not find that a 6–1 plan would remedy the voting rights violation. The plaintiffs' argument, however, overlooks the fact that the district court did not find that a 6–1 plan would not remedy the voting rights violation. Had the proposed 6–1 plan constituted a legislative plan, the district court

---

**2.** Following the November 1993 election, we called for supplemental briefs on the question of the impact of the results of the election upon the issues raised in the present appeals. In addition to submitting supplemental briefs, the plaintiffs

and the City filed a joint stipulation and motion for dismissal of the appeal. Two of the original defendants (members of the then-Board of Directors) opposed the motion, and we hereby deny it.

would have had to decide whether it remedied the voting rights violation, for a court's deference to a proposed legislative plan is limited by the "substantive constitutional and statutory standards to which such state plans are subject." *Upham v. Seamon,* 456 U.S. 37, 42, 102 S.Ct. 1518, 1521, 71 L.Ed.2d 725 (1982). We recognize that if we do not address the legality of the 6–1 plan adopted by the voters, further litigation is possible. The possibility of future litigation, however, is not a sufficient basis for us to decide an issue that the district court did not consider. Moreover, even if we were inclined to address the issue, we doubt that based upon the record before us we have enough information about the 6–1 plan to decide whether it violates the Act. Accordingly, we leave the question of the validity of the 6–1 plan for determination by the district court, should a challenge be mounted to that plan.[3]

The judgment is affirmed.

---

3. We have recently been advised by counsel for the City that the parties have agreed that if the district court's judgment is upheld on appeal, the parties will submit to the district court a motion asking that the 7–0 plan be eliminated effective January 1, 1996, with an election being held in November 1995 to elect a mayor at-large and directors from six wards, in accordance with the preference expressed by the voters in the November 1993 election.